6/3/97

IN THE COURT OF APPEALS

OF THE

STATE OF MISSISSIPPI

NO. 95-CA-00722 COA

MELINDA MCNEEL-SEITZ

APPELLANT

v.

ROBERT M. SEITZ

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. WOODROW WILSON BRAND, JR.

COURT FROM WHICH APPEALED: CLAY COUNTY CHANCERY COURT

ATTORNEYS FOR APPELLANT:

JOSEPH JOSHUA STEVENS, JR.

ATTORNEY FOR APPELLEE:

JOHN W. CROWELL

NATURE OF THE CASE: DOMESTIC RELATIONS: DIVORCE

TRIAL COURT DISPOSITION: THE CHANCELLOR GRANTED DIVORCE AND ORDERED DISTRIBUTION OF THE PROPERTY, AND CHILD SUPPORT

CERTIORARI FILED: 8/12/97

MANDATE ISSUED: 10/9/97

BEFORE McMILLIN, P.J., DIAZ, AND SOUTHWICK, JJ.

DIAZ, J., FOR THE COURT:

Melinda McNeel-Seitz (Melinda) was granted a divorce from Robert Seitz (Robert) on the grounds of irreconcilable differences in the Clay County Chancery Court. Melinda was granted primary physical custody of their child along with child support of $1,250 per month. Furthermore, the chancellor concluded in part that the marital property subject to division included IRAs, other retirement accounts and stock obtained after the marriage, excluding Seitz Lumber Company stock among other things. Concisely stated, Melinda asserts the following issues on appeal to this Court: (1) whether the chancellor erred in limiting the testimony of Roger N. Hill; (2) whether the chancellor erred in dividing the marital property; (3) whether the chancellor erred in determining the amount of child support; (4) whether the chancellor erred in denying Melinda's contempt citation; and (5) whether the chancellor erred in determining attorney's fees awarded. We hold that the chancellor erred in excluding the testimony of Roger N. Hill. Accordingly, we must reverse the case and remand this cause back to the chancery court for further proceedings.

FACTS

Melinda and Bob were married in 1987. After the marriage, Bob received 190 shares of Seitz Lumber Company stock, fifty percent interest in 100 acres known as the Proctor property, and fifty percent interest in 132 acres known as the Tibbee property. Furthermore, each party received from the Seitzes a twenty five percent interest in a 200 acre property known as the Bond property. All other stock and real estate were acquired by each party prior to the marriage. Mrs. Mamie Seitz, Bob's mother, testified that the couple's household furniture was acquired by Bob prior to the marriage. Mamie Seitz testified that the furniture was devised to her husband from the estate of Joy Seitz. Mamie selected the furniture that was to remain in the family and distributed it among her two sons. The Joy Seitz estate was closed prior to the marriage.

Bob worked as an office manager at the Seitz Lumber Company, a closely held family corporation, while Melinda worked as a paralegal. Melinda also spent a lot of time helping her father and his business ventures. Bob took no active part in Melinda's career other than making a few limited financial contributions. During the marriage, the couple employed both a nanny and a housekeeper to help manage the household. Therefore, Melinda was not restricted by her family duties in her pursuit of her career. Both parties actively pursued their individual careers.

In 1990, the couple decided to separate, and remained separated for about one year. After a brief attempt at a reconciliation, Melinda and Bob decided on a final separation in 1992. Although the couple was married for five and a half years, they did not live together for more than forty four months.

DISCUSSION

Our standard of review in domestic relations matters is limited. We will not reverse the findings of the chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. *Ferguson v. Ferguson*, 639 So. 2d 921, 930 (Miss. 1994). On appeal, we are required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong. *Id.* Having established this, we review the following issues.

# I. EXPERT TESTIMONY

Melinda next contends that the chancellor erred in limiting the testimony of her expert witness, Roger N. Hill. Mr. Hill was tendered as an expert to testify about the value of the common stock of the Seitz Lumber Company. Rule 702 of the Mississippi Rules of Evidence states "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." In other words, the query is "whether the particular witness really is an expert in the field in which he or she is tendered." *T.K. Stanley Inc. v. Cason*, 614 So. 2d 942, 951 (Miss. 1992).

During voir dire, Mr. Hill's credentials were established. Mr. Hill is a certified public accountant who has been practicing in West Point, Mississippi since 1979. He earned his degree in accounting from Mississippi State University, and has earned several professional designations. He has earned a designation as a Professional Personal Financial Specialist and Personal Financial Planner. He is registered as an Investment Advisor with the Securities Exchange Commission, as well as with the Secretary of State of Mississippi. As part of his duties as an accountant, he must evaluate closely held corporations in accordance with I.R.S. guidelines, which apply to all types of businesses. He has examined appraisals of equipment, land and other assets of Seitz Lumber Company provided by the company to the bank when they applied for loans. Hill has also advised clients who were interested in buying or selling businesses on the methods used in determining the fair market value. The method used in evaluating these businesses is uniform and applies to all businesses. The chancellor limited Hill to testify as an expert in the limited capacity as a certified public accountant. He was not qualified as an expert in calculating the value of the lumber company. At the conclusion of all the testimony, a proffer was made as to Hill's testimony where it was revealed that Hill would have presented three ways in which to evaluate a closely held corporation. All three methods apply to the evaluation of different types of businesses and have been accepted by the Internal Revenue Service as appropriate methods of evaluating closely held corporations.

This case is distinguishable from previous cases that have held that a reversal based solely on the lower court's exclusion of an expert witness is inappropriate when a proffer has not been made on the record. *See Hammond v. Grissom*, 470 So. 2d 1049, 1052-53 (Miss. 1985). In the present case, Hill's credentials were established and a proffer was appropriately made. We hold that Roger Hill should have been duly qualified as an expert and been allowed to testify regarding his evaluation of the Seitz Lumber Company.

# II. DIVISION OF MARITAL PROPERTY

## A. Marital Property

In the case *sub judice*, the chancellor determined that the marital property that should be considered for equitable distribution included each parties separate IRA accounts, 401-K plans, stock investments, household goods (except those accumulated by Bob before the marriage), and country

club stock that each party accumulated during the marriage. The lumber company stock was determined not to be marital property. Because we find that the testimony of Roger Hill was erroneously limited, the determination of the marital property may be subject to change based upon the evidence presented on remand.

## B. Alimony

Melinda argues that the chancellor erred in failing to consider awarding her lump sum alimony. She claims that she is entitled to an award of lump sum alimony because of the great disparity in the parties' separate estates. "It is hornbook law that whether to award alimony and the amount to be awarded are largely within the discretion of the chancellor." *Sarver v. Sarver*, 687 So. 2d 749, 756 (Miss. 1997).

The following factors must be considered in determining whether to award lump sum alimony: (1) substantial contribution to accumulation of wealth by quitting job to become housewife or assisting in husband's business; (2) long marriage; (3) separate income or separate estate meager in comparison to that of payor spouse and (4) financial security without lump sum alimony. *Creekmore v. Creekmore*, 651 So. 2d 513, 516 (Miss. 1995). The disparity of the separate estates has been the most compelling factor in determining whether to award lump sum alimony. *Id.*

It is apparent the court considered each factor in determining the amount of alimony to award. The court found that Melinda did not make a substantial contribution to their wealth either by relinquishing her career or assisting Bob in his career; in fact, the chancellor found to the contrary. Although the parties were married for over five years, apparently, they only lived together for about forty four months. The chancellor specifically found that from the time of their separation until the final divorce decree was entered, Melinda had re-established her economic circumstances and career opportunities. For those reasons, he denied lump sum alimony.

Where lump sum alimony has been awarded in the past, common elements have been present in most cases. *Grogan v. Grogan*, 641 So. 2d 734, 742 (Miss. 1994). The first common characteristic is that the wife's efforts were a material economic benefit to the husband's wealth. *Id.* These efforts usually include quitting her job to help him in his business, helping obtain an education, working in his business, and providing counseling in the husband's business or investments. *Id.* The second factor is being a dutiful and faithful housewife. *Id.* In the present case, although there is no indication that Melinda was not a dutiful and faithful wife, Melinda did not go out of her way to contribute to the economic benefit of Bob at her own expense. There was no abuse of discretion here.

## III. CHILD SUPPORT

Melinda contends that the chancellor erred in his determination of child support. The chancellor ordered Bob to pay Melinda $1250 a month in child support. In determining child support, the Court has recognized several factors for the chancellor to consider. These factors are: (1) the health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income of both parties; (4) the reasonable needs of the wife; (5) the reasonable needs of

the child; (6) the necessary living expenses of the husband; (7) the estimated amount of income taxes the respective parties must pay on their income; (8) the fact that the wife has the free use of the home, furnishings and automobile; and (9) such other facts and circumstances bearing on the subject that might be shown by the evidence. *Dufour v. Dufour*, 631 So. 2d 192, 194 (Miss. 1994). Furthermore, statutory guidelines set forth in Section 43-19-101 of the Mississippi Code are usually used in conjunction with the nine factors above to establish the appropriate child support award. *Draper v. Draper*, 658 So. 2d 866, 869 (Miss. 1995). The statutory language specifically states that the guidelines shall apply unless the judicial body awarding the award makes a written or specific finding on the record that the application of the guidelines would be unjust or inappropriate under Section 43-19-103 of the Code. Miss. Code Ann. 43-19-101(2) (Rev. 1994). Taking into consideration Clara's educational expenses (not including college) as well as an exhibit submitted detailing Clara's monthly expenses, the chancellor determined that Bob should pay $1250 per month in child support. We find that substantial evidence supports this finding.

## IV. CONTEMPT CITATION

Melinda claims the chancellor erred in failing to grant her any relief on her motion for contempt. In a previous temporary order entered in February 1993, the chancellor ordered Bob to pay $600 per month in temporary child support plus the cost of medical insurance and expenses for Melinda and Clara. In August 1994, Melinda filed a motion for contempt against Bob for $3080 in medical payments and $600 for one month arrearage in child support.

Bob argues that Melinda charged expenses to his account that were not authorized by the temporary order, such as meals at the country club and taxes on the Bond property. He contends that he had paid the medical bills in a timely manner, and that in fact, she owed him money. According to Bob, the outstanding bills that he owed to Melinda totaled $194.85, while Melinda owed him $287.50. He testified that he thought he had the right to deduct the money that Melinda owed to him. Apparently, the chancellor was satisfied with Bob's explanation and denied Melinda's motion for contempt. "Contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are." *Varner v. Varner*, 666 So. 2d 493, 496 (Miss. 1995). Finding no abuse of discretion here, we find no merit to this issue.

## V. ATTORNEY'S FEES

The chancellor awarded Melinda attorney's fees in the amount of $15,000 and $8,945 for expert witness fees. Melinda contends that she incurred more than $40,000 in attorney's fees and that she is unable to pay this fee. She argues that she should be awarded attorney's fees in a sum which would enable her to fairly present her case.

The determination of awarding attorney's fees in a divorce action is largely entrusted to the sound discretion of the lower court. *Ferguson*, 639 So. 2d at 937. The chancellor limited Melinda's recovery of attorney's fees stating in part:

The plaintiff utilized the services of three attorneys . . . paralegal, herself and her staff. An examination of the file will reflect no complicated legal question; that at the time, energy and cost was entirely devoted to discovery which, in the final analysis, was of limited benefit and assistance to the Court . . . Simply stated, this Court is of the opinion that the award of fees is adequate to compensate for that which was reasonably necessary and beneficial in the development and presentation of this case.

We are reluctant to disturb a chancellor's discretionary determination whether to award attorney's fees and the amount of any award. *Ferguson*, 639 So. 2d at 937. Considering the record, we cannot say that the chancellor abused his discretion in awarding the amount of attorney's fees. We find no merit to this issue.

<u>CONCLUSION</u>

We conclude that the chancellor erroneously limited the testimony of Roger Hill. Hill's background and methods of evaluating closely held corporations are accepted by the Internal Revenue Service. Furthermore, a proffer was properly made as to Hill's anticipated testimony. Therefore, we reverse this case based on this issue. On remand, Hill should be qualified as an expert in evaluating closely held corporations. Furthermore, the equitable division of the marital assets should be amended if necessary based on the evidence Hill will present. Finding no merit to the other issues raised on this appeal, we affirm the judgment in all other respects. Accordingly, we remand this cause back to the chancery court for proceedings consistent with this opinion.

**THE JUDGMENT OF THE CLAY COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED IN PART. THIS CAUSE IS REMANDED TO THE CHANCERY COURT FOR FURTHER PROCEEDINGS. COSTS OF THIS APPEAL ARE TAXED THREE-FOURTHS TO MELINDA MCNEEL-SEITZ, AND ONE-FOURTH TO ROBERT M. SEITZ.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**