# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-01361-SCT

*DELORES MULLINS HANEY DEVORE , a/k/a*
*DELORES DEVORE*

*v.*

*BOBBY O. DEVORE*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/15/96 |
| TRIAL JUDGE: | HON. DON GRIST |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | B. SEAN AKINS |
| ATTORNEY FOR APPELLEE: | JOE THOMAS GAY |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 12/17/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/7/99 |

**BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This case arises out of a ruling by the Tippah County Chancery Court wherein Bobby Devore was granted a divorce of the grounds of irreconcilable differences, pursuant to Miss. Code Ann. § 93-5-2, from Delores Mullins Haney Devore.

¶2. On May 26, 1995, Bobby filed a complaint for divorce and other relief in the Chancery Court of Tippah County, Mississippi. Delores filed her *pro se* answer on June 22, 1995. The final divorce decree was entered March 28, 1996. The following day, Delores filed a Motion to Set Aside the Final Decree of Divorce. On April 19, 1996, there was an Order filed in response to the Petitioner's Motion to Set Aside Final Decree of Divorce on temporary issues, signed by both counsel and the court which barred either side from selling or transferring any real or personal property pending final resolution of the matter and continued the case until July 16, 1996.

¶3. On May 1, 1996, Delores filed a counter-complaint for divorce, but signed a motion to dismiss same on May 9, 1996. An agreed order to set aside final decree of divorce, signed by the court was entered on

August 7, 1996.

¶4. A consent to divorce on the grounds of irreconcilable differences was filed in the Tippah County Chancery Court on November 7, 1996. In that consent, both parties agreed to withdraw and dismiss all other grounds alleged in the complaint, the counter-complaint and to withdraw any answers as related to the grounds for divorce leaving before the court only the divorce on irreconcilable differences and the issue of the division of real estate, including a house and ten acres of land.

¶5. In his ruling the chancellor found that the house and the adjoining ten (10) acres of land was non-marital property reasoning that the property was acquired by Bobby approximately thirty (30) years before his year long marriage to Delores. The chancellor further found that Delores should be divested of any title she had obtained in the property in the last year and title should be vested solely in Bobby.

¶6. In making his ruling, the chancellor found that he must consider "the facts that the defendant during the period of the marriage took care of, nurtured, watched after the plaintiff during one of his hip operations, or knee operations, when in fact prior to the marriage she took care of him for an operation during the time - - prior to the marriage." The chancellor further reasoned that "[t]he real property was acquired by the plaintiff some 30 odd years ago at which time he was married to his first wife. The deed was made, transferring the [one half] interest in the property from the plaintiff to the defendant for a period of approximately a month to three months at best when the parties finally separated. The defendant made no contribution toward the purchase of this property."

¶7. Feeling aggrieved by the decision of the Tippah County Chancery Court, Delores timely filed her appeal with this Court citing the following issue on appeal:

> **WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR IN DIVESTING DELORES MULLINS HANEY DEVORE OF HER INTEREST IN THE PARTIES JOINTLY OWNED MARITAL RESIDENCE, AND HER INTEREST IN APPROXIMATELY TEN ACRES OF JOINTLY OWNED LAND, ALL OF WHICH WAS DEEDED TO HER BY BOBBY O. DEVORE, WHEN THE CHANCELLOR FOUND THAT SAID HOME AND LAND WAS NONMARITAL PROPERTY.**

## Standard of Review

¶8. This Court's scope of review is limited in appeals from the Chancery Court. A chancellor's decision will not be reversed if the finding of fact is supported by substantial credible evidence in the record. *Hammett v. Woods*, 602 So.2d 825, 827 (Miss. 1992) (*citing Clark v. Myrick*, 523 So.2d 79, 80 (Miss. 1988)). "This Court will not disturb those findings, unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Faries v. Faries*, 607 So.2d 1204, 1208 (Miss. 1992) (*citing Hill v. Southeastern Floor Covering Co.*, 596 So.2d 874, 877 (Miss. 1992)).

## STATEMENT OF FACTS

¶9. Delores Mullins Haney Devore and Bobby O. Devore were married on June 3, 1994. The marriage was turbulent at best, and the parties separated five (5) times during the year they were married.

¶10. Bobby had owned the home and one and one-half acres on which it was located for thirty (30) years prior to his marriage to Delores. Bobby owned the adjoining eight and one-half acres of land for twenty

(20) years prior to marriage. The home and the adjoining land is the subject of this dispute. While the record neither disputes nor corroborates her claim, Delores claims she and her family spent considerable time and effort renovating the home. However, it is undisputed that Bobby either borrowed the money or used his own personal cash to fund any renovations that were done on the house.

¶11. Bobby moved out of the marital home at least five (5) times during the marriage. In March of 1995, however, Bobby returned home from work to find that Delores had moved all of her belongings and some of his to a storage building. On April 7, 1995, Bobby deeded Delores one-half of the house and the ten (10) acres of land provided she would "make him a wife." According to the record, Delores left Bobby in June of 1995, approximately two months after the Deed was executed.

¶12. Bobby came before the Tippah County Chancery Court seeking to divest Delores of any title she had in the house and the ten (10) acres of land. Bobby argued various factors for the court's consideration in determining who should be awarded the property. Bobby listed additional reasons such as Delores gave no monetary consideration for the property, a fact that she agreed to in the record. Bobby claims Delores paid only $400.00 in household bills during the entire marriage. Bobby also borrowed $9,000.00 to remodel the house on a note which Delores did not sign. Delores, by her own admission, did not help in the repayment of that loan of which $5,000.00 is still owed solely by Bobby. Finally, Bobby adds that Delores offered little help on the renovations of the house. He does admit that her mother and her sister helped some. Finally, the record is not clear whether the remodeling was done before or after the marriage.

¶13. Less than one (1) year after Bobby and Delores married, and less than two (2) months after Bobby deeded a one-half interest to Delores, he filed for divorce on the grounds of irreconcilable differences under Miss. Code Ann. § 93-5-2. Delores moved out sometime in June or July, 1995. Delores left the marriage with a car purchased for her by Bobby, a love seat, a sofa, a new bedroom suite with a $900.00 mattress set, a set of wedding rings and various sundry items. Bobby was furthered ordered, by the court, to pay Delores a total of $3,500.00 "for equitable distribution of the property between these parties."

**WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR IN DIVESTING DELORES MULLINS HANEY DEVORE OF HER INTEREST IN THE PARTIES JOINTLY OWNED MARITAL RESIDENCE, AND HER INTEREST IN APPROXIMATELY TEN ACRES OF JOINTLY OWNED LAND, ALL OF WHICH WAS DEEDED TO HER BY BOBBY O. DEVORE, WHEN THE CHANCELLOR FOUND THAT SAID HOME AND LAND WAS NONMARITAL PROPERTY.**

### Introduction

¶14. In the only issue appellant presents for this Court's review, she argues that because the Chancellor found the house and the ten (10) acres of land to be non-marital property, it was not subject to equitable distribution and as such the judge erred in divesting her of title. Appellant correctly argues that non-marital property is not subject to equitable distribution. *See Ethridge v. Ethridge*, 648 So.2d 1143, 1145 (Miss. 1995); *Maslowski v. Maslowski*, 655 So.2d 18, 20 (Miss. 1995).

### Analysis

¶15. The Chancellor was correct in divesting Delores of title and vesting title in Bobby. Realizing that non-marital property is not subject to equitable distribution, the Chancellor did not equitably divide the real

estate. Rather, he used the power this Court granted him in *Draper v. Draper,* 627 So.2d 302 (Miss. 1993), to divest Delores of title to property that Bobby brought into this very short-lived marriage. The real property was never part of the marital estate and under *Draper*, the Chancellor was allowed to re-invest title in Mr. Devore.

¶16. Furthermore, this Court said in *Chamblee* that "...[a recent] line of cases permit the chancellor to look beyond the property's title to determine who should rightfully be awarded the property...." *Chamblee v. Chamblee*, 637 So.2d 850, 865 (Miss. 1994). Therefore equitable distribution, in the sense of fairness, warrants that the Chancellor was correct in divesting Delores of title to a house and property Bobby had owned for thirty and twenty years respectively and in which Delores lived as his wife less than one year.

¶17. Considering the broad discretion granted to chancellors to do what equity and justice require, we find the issue before this Court is without merit. While it is true that non-marital property is not subject to equitable distribution, it is also true that a chancellor may, when justice dictates, divest one spouse of title in favor of the other spouse. A thorough review of the record in this case reveals that a terrible injustice would have resulted had the judge below issued any other ruling in regard to the real estate in question.

¶18. This Court is not prepared to ignore facts as telling as the ones now before us for consideration. For these reasons, equity demands that full title to the home and land be vested in Bobby with no change being made to the Chancellor's distribution of the marital property involved herein.

¶19. In *Hemsley v. Hemsley*, this Court stated, "[w]e define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor." *Hemsley v. Hemsley*, 639 So.2d 909, 915 (Miss. 1994). Hence, non-marital property, property not acquired or accumulated during the marriage, is not subject to being equitably distributed by the chancellor during a divorce.

¶20. The property at issue in the present case was a house and some acreage that Bobby had owned more than twenty years before he became involved with Delores. This property is therefore, not marital property and hence, not subject to being equitably distributed by the chancellor in this case.

¶21. Even were we to consider them part of the marital property *arguendo*, still Delores would not be entitled to have an equitable distribution of these particular assets because in *Hemsley*, this Court went on to say, "[a]ssets acquired or accumulated during the course of a marriage are subject to equitable division **unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage.**"*Id.* at 914 (emphasis added). Therefore, even if this property were considered to be marital property, both parties agree that this property had belonged to Bobby for years before this marriage took place. One and one-half acres Bobby purchased and received a deed for in 1963. The deed to the other eight and one-half acres was obtained in 1971. The Devores were not married until June of 1994. Delores also testified at their divorce proceeding to the following:

Q: What did you give or pay to Bobby to put that house, half an interest of the house in your name?

A: What did I what?

Q: What did you promise? What did you give? What type of consideration did you give Bobby?

A: **I didn't give anything.**

Q: Did you tell him y'all were going to try to make this marriage work?

A. Oh, yes, I understood we were going to the whole time. He's never asked me for a divorce.

¶22. *Sarver v. Sarver*, is a factually similar case wherein a retired 65 year old California man married a woman in California and he then purchased 78 acres in Mississippi exclusively with his money from his premarital earnings. *Sarver v. Sarver*, 687 So.2d 749, 752 (Miss. 1997). "[A]ll the funds used to purchase the property were his, and all were accumulated prior to this marriage, it was his desire to leave the real estate to his three children from previous marriages, with the 'understanding' that Marie [wife] could live on it for her lifetime if she remained married to him." *Id.*

¶23. In *Sarver*, the wife of some twelve years (only two years at the time of the purchase of the property) argued "that when one spouse purchases property while married and the married couple takes the property as joint tenants, there is a rebuttable presumption of a gift to the other spouse of a one-half interest in the property so acquired." *Id.* at 754. This Court held, "there is clear and convincing evidence that Roy [husband] never intended to make the home a gift to Marie by conveying fee simple title to her. Instead, it was his intention of conveying to her only a life estate contingent upon her remaining married to him until the time of his death." *Id.*

¶24. Similarly, in the present case, the land and home had been owned by Bobby for years prior to knowing Delores. The testimony at the trial reveals the same sort of arrangement present in *Sarver* was present in the case *sub judice*. Bobby testified at the divorce proceeding as follows:

Q: At your request I [Bobby's attorney] made a deed for you, did I not?

A: (Witness [Bobby] nodding head.)

Q: i.What was your understanding, was she [Delores] going to stay with you, or what?

A: I put her name on the deed **if she stayed with me and make (sic) me a wife.**

¶25. The implication is very strong here as it was in Delores's testimony that in return for her name being placed on the deed she would have to stay with Bobby as Bobby's wife. Clearly here she did not comply with this agreement. Within less than two months from the time her name was placed on the deed she took all of her belongings (and some of his) and moved out of the house leaving Bobby alone.

¶26. Based on this Court's precedent in *Sarver*, the chancellor was well within his discretion when he divested Delores of title to this non-marital property. This property was Bobby's long before the marriage, and she was only put on the deed in an attempt to salvage their tempestuous marriage. It did not work. Delores contributed little if anything to the current value of the property and certainly did not live up to terms of their agreement.

¶27. The chancellor's decision was supported by substantial credible evidence in the record. Bobby testified that he owned this property upwards of twenty years before the marriage. This was stipulated to by Delores. Bobby also testified that in exchange for Delores's name being placed upon the deed, she would stay with him as his wife. Delores testified that she gave nothing of value for her interest in the property and

further testified that she told Bobby that they were going to try to make the marriage work. Within two months after being placed upon the deed she left Bobby with an empty house having taken all of her belongings along with some of his while he was at work. This testimony, taken together, is sufficient evidence to warrant divesting Delores of her interest in the property at issue here. We hereby affirm the chancellor's decision.

¶28. The $3,500.00 which the Chancellor ordered Bobby to pay was labeled "for equitable distribution of the property between the parties." This is an improper labeling. This Court properly labels this award "lump-sum alimony." In a similar situation where a chancellor wrongfully labeled an award of money to the divorced wife "in lieu of alimony" this Court found that it was not "in lieu of alimony," but was "for all practical purposes, an award of lump-sum alimony . . . ." *Smith v. Smith*, 614 So.2d 394, 397-98 (Miss. 1993). Similarly here, even though the money was wrongly labeled, we simply correct the label and find it to be "lump-sum alimony" and affirm its award.

¶29. **AFFIRMED .**

**SULLIVAN, P.J., McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. PRATHER, C. J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, J.**

### PRATHER, CHIEF JUSTICE, SPECIALLY CONCURRING:

¶30. I agree with the majority that the ruling of the chancellor should be affirmed. However, I disagree with the majority's analysis on two points. First, the wife's one-half interest in the homestead was acquired during the marriage, and was, therefore, marital property, subject to equitable distribution. Second, the chancellor properly distributed the marital property, and the $3,500 distribution to the wife was not lump-sum alimony. For these reasons, I write to specially concur.

¶31. It is inconsistent for the majority to rule that the property was non-marital in nature, and then divest the wife of title to that property. Although the husband proved that the house and adjoining land were originally his, he converted these assets to jointly-owned, marital property when he deeded his wife a one-half interest therein.[1] *See Johnson v. Johnson*, 650 So. 2d 1281, 1286 (Miss. 1994). That is, the homestead was marital property, subject to equitable distribution.

¶32. Given the wide discretion granted a chancellor, and the numerous factors to be considered in the equitable distribution of property, it does not appear that the chancellor erred in divesting the wife of her one-half interest in the homestead. The record reflects that the wife did not contribute to the accumulation of this property, and the husband, individually, owed thousands of dollars for renovations. Thus, divesting the wife of title to this marital property was appropriate, under the precepts of *Draper v. Draper*, 627 So. 2d 302 (Miss. 1993), and *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994). Similarly, the facts support the chancellor's distribution of $3,500 to the wife. *See Id.* The chancellor correctly labeled this award, and there is no apparent need to redefine the nature of the award.

¶33. Thus, I agree with the majority's decision to affirm the chancellor, but disagree with the manner in

which the majority reached this conclusion. Therefore, I specially concur.

**BANKS, J., JOINS THIS OPINION.**

1. There is some testimony that the property was given on the condition that Delores "make a wife"; however, there is no contractual argument of failure of consideration before this Court. Rather, the record indicates that the property was a gift, given from the husband to the wife, in an effort to save the marriage. The circumstances of the gift were before the chancellor for consideration, in determining the equitable distribution of property.