820 So.2d 761 (2002)
Carlton Deforest WILSON, Appellant,
v.
Maudeste Karen WILSON, Appellee.
No. 2001-CA-00659-COA.
Court of Appeals of Mississippi.
June 25, 2002.
*762 Roy J. Perilloux, Jackson, James Eldred Renfroe, Daniel Brian Allen, Attorneys for Appellant.
Michael Hartung, Jackson, Attorney for Appellee.
EN BANC.
MYERS, J., for the court.
¶ 1. Carlton Wilson was granted a divorce from his wife, Maudeste Wilson, on February 26, 1999. Maudeste received no notice of the hearing on the divorce petition and petitioned the chancellor to vacate the divorce decree. The chancellor refused to vacate the divorce itself but did vacate part of the decree concerning the division of property. Upon hearing evidence concerning the marital property, the chancellor awarded Maudeste an undivided one-half interest in the marital home. Aggrieved by this decision, Carlton perfected this appeal raising the following issues:
1. WHETHER THE CHANCELLOR ERRED IN VACATING THE PROPERTY DIVISION CONTAINED IN THE INITIAL DIVORCE DECREE; AND
2. WHETHER THE CHANCELLOR ERRED IN AWARDING MAUDESTE WILSON AN INTEREST IN THE MARITAL HOME.

STATEMENT OF FACTS
¶ 2. Maudeste and Carlton Wilson were married on June 12, 1993. Maudeste filed a petition for separate maintenance or, alternatively, divorce from her then husband Carlton on June 5, 1998. Maudeste subsequently moved to Texas where after fulfilling the residency requirements filed for divorce against Carlton in that state. The action in Texas was eventually dismissed because of the pending litigation in Mississippi. Carlton answered Maudeste's petition for separate maintenance or, alternatively, divorce on November 13, 1998. In the same pleading, Carlton asserted a counterclaim for divorce against Maudeste. Maudeste failed to answer Carlton's counterclaim and petitioned the chancellor through correspondence to dismiss her litigation as she did not wish to proceed. Maudeste's first attorney was allowed to withdraw from the litigation on February 1, 1999. Carlton pursued his counterclaim, was granted a divorce on February 26, 1999, and was awarded sole possession of the marital home. Maudeste did not receive notice of the proceedings held that day or the judgment rendered by the chancery court. On March 2, 1999, Maudeste through her new attorney of record answered Carlton's counterclaim.
¶ 3. Maudeste subsequently learned of the chancellor's divorce decree and filed a motion to vacate and set aside the final divorce decree. The chancellor refused to set aside the divorce itself but vacated the part of the divorce decree concerning the division of marital property. On February 20, 2001, Maudeste was awarded a one-half interest in the marital home. Aggrieved by the chancellor's decision, Carlton perfected the present appeal.

LEGAL ANALYSIS
¶ 4. This Court has limited powers of review over a chancellor's equitable division of marital property. Henderson v. Henderson, 757 So.2d 285, 289(¶ 19) (Miss. 2000). We "will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his *763 discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Parsons v. Parsons, 741 So.2d 302, 306(¶ 21) (Miss.Ct.App.1999). The chancellor must determine what credibility and weight to give to the evidence. Powell v. Ayars, 792 So.2d 240, 243(¶ 6) (Miss.2001). With this standard in mind, we look to the issues raised in this appeal.

1. WHETHER THE CHANCELLOR ERRED IN VACATING THE PROPERTY DIVISION CONTAINED IN THE INITIAL DIVORCE DECREE.
¶ 5. The chancellor vacated the initial divorce decree to revisit the division of marital assets, particularly the marital home, based on principles of equity. "Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' estates prior to the marriage or outside the marriage." Parsons, 741 So.2d at (¶ 25). It is uncontroverted that Carlton paid for the house from the sale of assets he acquired prior to his marriage to Maudeste. Maudeste's only claim to the house is that the initial title to the house contained her name. However, "title is no longer determinative in deciding a party's rights to the property." Id. at (¶ 26). Maudeste has failed to show that she contributed to the marital property during the course of their five year marriage in order for her to obtain an interest in the marital home.
¶ 6. The chancellor abused her discretion when she set aside the initial divorce decree and awarded Maudeste a one-half interest in the marital home as the evidence clearly shows that Carlton paid for the marital home entirely from the sale of assets he acquired prior to their marriage. The chancellor's decision is reversed and this case is remanded to the chancery court so that Carlton can be awarded the entire interest in the home.
¶ 7. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELEE.
KING, P.J., BRIDGES, LEE, IRVING, And CHANDLER, JJ., CONCUR. BRIDGES, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, MYERS, AND CHANDLER, JJ. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MCMILLIN, C.J., THOMAS AND BRANTLEY, JJ.
BRIDGES, J., concurring:
¶ 8. I join with the majority in reversing and remanding the judgment of the Chancery Court of Hinds County. My concerns with this case are twofold: first, the marriage was relatively short; second, there is too little evidence to support Maudeste Wilson having contributed to the homestead property in a meaningful way. This Court has no record of the initial hearing before the chancellor, where the chancellor awarded a full possessory interest to Carlton Wilson, and so it is difficult to judge if that decision was more or less correct than the chancellor's self-reversal. However, that initial decision, coupled with the evidence before this Court, suggests to me that the chancellor's initial determination was in fact correct.
¶ 9. In Mississippi, property acquired during the marriage but from the proceeds of non-marital property may be considered non-marital. Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994). Further, even property in which a half-interest has been conveyed to the spouse may be considered non-marital if the spouse did virtually *764 nothing to sustain the property. Devore v. Devore, 725 So.2d 193, 197-198 (¶¶ 21-28) (Miss.1998). Although unlike Devore, Carlton Wilson had not owned this property exclusively and solely for twenty years prior to the marriage, there was no suggestion that the property Wilson sold in Texas to build his home in Mississippi was ever considered marital property. The testimony before the chancellor also suggests that Maudeste Wilson's contribution to the homestead in Hinds County was desultory at best, since she provided virtually no financial support for it, nor did she assist meaningfully in its construction. Her sole claim to the homestead is that her name appears on the title, and that she lived in the house for some three years.
¶ 10. For these reasons, I concur with the majority.
LEE, MYERS AND CHANDLER, JJ., JOIN THIS SEPARATE OPINION.
SOUTHWICK, P.J., dissenting:
¶ 11. The majority holds that the chancellor abused her discretion in awarding any part of the equity in the marital home to the wife. This decision is based on accepting the husband's evidence that no part of the original purchase funds nor the monthly mortgage payments came from the wife. There are two problems with that. The first is that the original character of assets as separate property is lost if the funds are used to benefit the marriage. This was the marital residence of the parties. It provided them a home in which to live. There may be no more quintessentially marital an asset than this. The marital home is not separate property even if purchased with funds obtained outside of the marriage. Secondly, the chancellor, based on conflicting evidence, found that the wife had turned over all of her income to the husband for him to use during the marriage. It was a reasonable inference based on this evidence that during the six year marriage Mrs. Wilson's funds were used at least for mortgage payments.

Marital propertythe home
¶ 12. Mr. Wilson alleges that his former wife is not entitled to any part of their marital residence because she did not contribute to its purchase. He argues that he "undoubtedly contributed a remarkable amount more physically, mentally, and financially to the property than did" his former wife. Mrs. Wilson worked during the six-year marriage and her income was placed into the couple's joint account. Her retirement account from a former job had been closed and those funds put into the joint account.
¶ 13. First, the argument that the source of funds remains controlling for the character of assets can be quickly rejected: "nonmarital assets (e.g., inherited property) may be converted to marital assets if they are commingled with marital assets or used for familial purposes. Such converted assets are then subject to equitable distribution." Heigle v. Heigle, 654 So.2d 895, 897 (Miss.1995). In Heigle, the wife inherited $10,000 that was then placed in an account which the married couple used to purchase cattle. The income from the cattle business was used for marital purposes. Surely purchasing a house in which to live is as much of a familial purpose as purchasing a cow.
¶ 14. Similarly, in the case relied upon by the chancellor, a central issue was the wife's inheritance of certain assets. Johnson v. Johnson, 650 So.2d 1281 (Miss. 1994). The wife received $153,000 from three timber sales during the marriage; much of these inherited funds were used for the benefit of the family or placed into accounts controlled by the husband. Id. at 1286. The husband repaid the wife $66,000 of the original $153,000. Id. The *765 wife claimed that the funds remained nonmarital property by virtue of the fact that she inherited those amounts. Although the inherited funds may have begun as non-marital property, they became marital property subject to equitable distribution when the funds were commingled with other marital property or used for benefit of the family. Id. The amounts repaid by the husband regained their non-marital status. Id. Here, the couple's house was used for the benefit of the family. It became and remained marital property until divorce.
¶ 15. This analysis applies even if Mrs. Wilson did not contribute any money to the purchase or continued ownership of the residence. However, there was evidence that all of the income that Mrs. Wilson earned during the marriage was placed in a joint account, an account that Mr. Wilson used to pay a variety of the couple's bills. He testified that he made all the mortgage payments, and Mrs. Wilson could only plead ignorance as to what he had used the money to pay. The chancellor then concluded: "all the money in that joint account could not have been used just to simply pay for the groceries or food and a couple of trips to the pharmacy... [T]here were monies that were in that account, in this Court's opinion, that have not been accounted for in some realistic portion." The chancellor did not accept Mr. Wilson's protests that none of his wife's money was used on the house.
¶ 16. This was a marital asset. That finding is not, as the majority says, based solely on the fact that both spouses' names were on the deed. This was the marital home, not the separate hunting shack of the husband. The separate property used to purchase the house lost its separate character when what was purchased was the familial house. Thus, the chancellor had the authority to award some interest in the house. The more difficult issue is whether awarding a half interest was justified. I review the chancellor's findings that undergird the decision. The factors applied by the chancellor came from the "non-exclusive list" found in Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994).
1. Substantial contribution to the accumulation of the property. Among the considerations are these:
a. Direct and indirect economic contribution. The chancellor noted that the principal financial contribution to the home purchase was from the husband. As already quoted, though, the chancellor doubted that mortgage payments were made solely from Mr. Wilson's income. Even if they were, Mrs. Wilson's funds were being used at her husband's discretion for other, presumably marital purposes.
b. Contribution to the stability and harmony of the marriage. The chancellor found that Mrs. Wilson had contributed substantially to "the marriage and family relationship."
c. Contribution to the education, training, or other accomplishment bearing on the earning power of the spouse accumulating the assets. Mrs. Wilson had attended graduate school during the marriage, and the chancellor accepted that this is what her husband wanted her to do. Her expenses were at least partly paid from the couple's joint account, an account which included all of her own earnings. Her future income potential for the benefit of the marriage, had the marriage continued, was therefore enhanced.
2. The degree to which the spouses disposed of marital assets and any prior distributions. The chancellor found no relevance to this factor.
3. Market and emotional value of assets. The chancellor determined that this *766 was not relevant in her decision as to the home.
4. Value of other assets not ordinarily subject to distribution. There was no meaningful testimony regarding other assets.
5. Tax and other economic consequences of distribution. All the chancellor noted about this consideration was that the parties had during the marriage filed a single joint return.
6. Use of property to eliminate future sources of friction between the parties that might arise. The chancellor did not believe that alimony was appropriate for either party. Mrs. Wilson with her advanced degrees would be able to provide a standard of living for herself at least the equivalent of what her former husband would enjoy. This sole property division would "conclude the parties' legal relationship, leaving them each in a self-sufficient state where the facts and circumstances permit total dissolution."
7. Financial needs of each person in light of assets, income, and earning capacity. No weight was found to exist from this factor.
8. Anything else that is relevant. No other consideration was discussed.
¶ 17. This was the only part of the chancellor's order that provided any financial assistance to either party. There was no other marital property ordered to be divided, and no alimony. Without equitable division of the marital home, Mrs. Wilson would have received no financial assistance from the divorce decree. The majority as well as Mr. Wilson conclude that receiving nothing is at it should be. Under Ferguson, that is a decision initially to be made by the chancellor as guided by the enumerated considerations there set out. The chancellor followed those requirements. Not to award some part of the value of the marital home to the wife would have been difficult to justify. Awarding one-half of the value was in my view on the high end of what was a proper exercise of discretion, but I do not find reversible error.
¶ 18. In sum, the division of marital property is not based on determining whose income contributed what percentage of its acquisition cost, with an identical proportionate distribution then being made. Contributions to marriage come in many forms. Precedents have established that a housewife's manifold contributions can be as meaningful to the acquisition of marital assets as the working husband's financially compensated employment. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Mrs. Wilson's participation in the paid workforce and in doing graduate work do not obliterate these same considerations when determining the portion of the marital estate that she should receive. The residence was marital property. The chancellor found that she should receive a half interest in that property. Unless that was an abuse of discretion, we should affirm. I would.

Procedural issues
¶ 19. The other issue raised on appeal was whether the chancellor improperly set aside the property division in the original divorce because Mrs. Wilson had not received any notice of the hearing on the divorce. The chancellor found that Mrs. Wilson had appeared in the action and must be given notice before the hearing. The majority does not address this question because it reverses on a different basis. Since I would affirm on that question, I briefly discuss the procedural issue.
¶ 20. Mrs. Wilson filed the original complaint. Then her husband filed a counterclaim for divorce, a pleading to which no response was filed prior to the hearing. Relying on a precedent that explains that *767 someone who never appears in a case is not entitled to notice of hearings, Mr. Wilson concludes that no appearance occurred here. Stinson v. Stinson, 738 So.2d 1259, 1262 (Miss.Ct.App.1999). Without questioning the cogency of Stinson's explanation, I find that analysis only partly applicable here. To divide up the claims and counterclaims in a lawsuit, and to state that for Rule 55 default purposes a party may be found to have appeared as to some claims but not as to others is certainly not what Stinson addresses. Here, Mrs. Wilson filed the initial complaint for divorce. Without a doubt, she appeared in her own suit. What she did not do is defend against the counterclaim.
¶ 21. The official comments to Rule 55 reveal that whether a party has appeared and whether a party has defended are two different questions. A "mere appearance by a defending party will not keep him from being in default for failure to plead or otherwise defend...." M.R.C.P. 55 cmt. Even a "plaintiff's failure to reply to a counterclaim may entitle defendant to an entry of default on the counterclaim." Id. It is the failure to plead that allows a default. Only if there is also a failure to appear may judgment be entered without three days notice. M.R.C.P. 55(b) & cmt.
¶ 22. A party can never defend without appearing. A party can appear without defending.
¶ 23. Mrs. Wilson sought to dismiss her suit prior to the default. Her attorney, just weeks before the default, had been allowed to withdraw. Though Mrs. Wilson sought to dismiss her complaint, the never-executed order that she submitted would have dismissed the entire litigation. Getting her husband to dismiss his claims appears to have been a predicate for dismissal of her own. Mrs. Wilson's letters to the chancellor indicated that her husband would not "cooperate," which to me means that he would not agree to dismissal of his suit. Regardless of whether Mrs. Wilson was in fact willing to drop her suit irrespective of what her husband did, no dismissal of anything occurred prior to the judgment entered without notice. Thus, Mrs. Wilson had appeared and had not yet been allowed to disappear.
¶ 24. In cause number G-98-1103 W/4, Hinds County Chancery Court, Mrs. Wilson made an appearance. Indeed, her complaint opened the court file. All the claims were in that suit. How to contact the party had been established; pleadings and correspondence had been exchanged. Under Rule 55, a request for entry of default may be sought when the party has manifested no intention to defend some part of the litigation. But nothing in the rules requires and I do not believe we should add as a gloss that appearance is determined claim by claim. The fact that the counterclaim can become a free-standing suit does not in my view change the reality of appearance. The entire suit was still pending when unnoticed judgment was entered.
¶ 25. A person appears in litigation, not in individual paragraphs of pleadings.
¶ 26. Of course, in this suit Rule 55 is only applicable by analogy since this was not a default judgment. In a divorce, a chancellor may grant judgment after an uncontested hearing, but no default judgment can be entered. Notice of the hearing may be withheld only if a party over whom jurisdiction has been acquired has not appeared. Stinson, 738 So.2d at 1262.
¶ 27. Mrs. Wilson had appeared in the suit. She should have received notice.
¶ 28. Even assuming notice was unnecessary, a chancellor has discretion to set aside a final judgment for any reason that justifies relief. M.R.C.P. 60(b)(6). That is the authority the chancellor explicitly used *768 here. Applying equitable considerations to set aside a decree entered without the participation of one of the spouses, whether notice had to be given that party or not, is not a power that should be circumscribed narrowly. The failure to award any portion of the value of the marital home to the wife was a significant equitable issue that was commendably addressed under Rule 60.
McMILLIN, C.J., THOMAS AND BRANTLEY, JJ., JOIN THIS SEPARATE WRITTEN OPINION.