755 So.2d 1225 (1999)
Elizabeth Anne BURNHAM-STEPTOE, Appellant,
v.
Geoffrey Johnathan STEPTOE, Appellee.
No. 97-CA-00428-COA.
Court of Appeals of Mississippi.
September 14, 1999.
Rehearing Denied November 23, 1999.
*1228 Robert W. Long, Canton, Attorney for Appellant.
Albert B. White, Madison, Attorney for Appellee.
EN BANC.
BRIDGES, J., for the Court:
¶ 1. Elizabeth Steptoe and Geoffrey Steptoe married in 1992 and separated in 1995. Pursuant to their divorce in 1996, the Madison County Chancery Court granted custody of the two minor children of the marriage to Ms. Steptoe. Furthermore, Ms. Steptoe was awarded $557 per month for child support, $300 per month for twenty-four months as rehabilitative alimony, and $10,000 in attorney fees. Mr. Steptoe is required to maintain medical insurance for the children, pay half of the children's non-covered medical expenses, make the payments for Ms. Steptoe's automobile for twenty-four months or until the payments are completed, whichever occurs first, and maintain a $50,000 life insurance policy on himself with the two children named as beneficiaries. The chancellor awarded to Ms. Steptoe half of the marital property after deducting liabilities from the marital assets.
¶ 2. Ms. Steptoe appeals, citing the following assignments of error, which we quote verbatim from her brief:
1. THE TRIAL COURT ERRED IN ITS METHODOLOGY IN ARRIVING AT MR. STEPTOE'S ADJUSTED GROSS INCOME, UPON WHICH IT BASED ITS CALCULATIONS OF MONTHLY CHILD SUPPORT PAYMENT DUE TO MS. STEPTOE BY HER FORMER HUSBAND. THUS, THE TRIAL COURT COMMITTED MANIFEST ERROR AND ABUSED ITS DISCRETION IN ARRIVING AT THE AMOUNT OF CHILD SUPPORT WHICH IT AWARDED TO MS. STEPTOE.
2. THE TRIAL COURT ERRED WHEN IT FAILED TO EITHER GRANT EXCLUSIVE USE OF THE MARITAL HOME TO MS. STEPTOE OR TO REQUIRE MR. STEPTOE TO PROVIDE MS. STEPTOE AND THE MINOR CHILDREN OF THE PARTIES AN ADEQUATE PLACE TO LIVE.
3. THE TRIAL COURT ERRED IN ITS CALCULATION OF THE VALUE OF NATIONAL LODGING, THE BUSINESS AND MAJOR MARITAL ASSET JOINTLY OWNED BY THE PARTIES. THUS, THE TRIAL COURT COMMITTED MANIFEST ERROR IN ITS EQUITABLE DISTRIBUTION OF ASSETS ACCUMULATED BY THE PARTIES DURING THE COURSE OF THEIR MARRIAGE.
4. THE TRIAL COURT ERRED IN DEDUCTING FROM MS. STEPTOE'S SHARE OF MARITAL ASSETS ANY DEBT OWED BY HER AS A RESULT OF HER PARTICIPATION IN THE BUSINESS "TIMES CHANGE".
5. THE TRIAL COURT COMMITTED MANIFEST ERROR WHEN IT DEDUCTED FROM HER SHARE OF THE VALUE OF HER MARITAL ASSETS THE AMOUNT OF ANY DEBT INCURRED PRIOR TO THE MARRIAGE BY MR. STEPTOE IN *1229 THE OPERATION OF ABBEY NATIONAL TRANSPORT, A BUSINESS CREATED AND OPERATING PRIOR TO THE MARRIAGE OF THE PARTIES.
6. THE TRIAL COURT ERRED IN FAILING TO AWARD EITHER LUMP SUM OR PERMANENT PERIODIC ALIMONY TO MS. STEPTOE.
7. THE TRIAL COURT COMMITTED MANIFEST ERROR IN FAILING TO AWARD ADEQUATE ATTORNEYS FEES AND OTHER LITIGATION EXPENSES INCURRED BY MS. STEPTOE IN THESE PROCEEDINGS, INCLUDING THE FEES OF HER CERTIFIED PUBLIC ACCOUNTANT, WHO WAS THE ONLY WITNESS TO TESTIFY AND GIVE EVIDENCE OF THE VALUE OF THE BUSINESSES OF THE PARTIES.
Mr. Steptoe counters that the chancellor's decision is based upon substantial evidence.
¶ 3. We affirm the judgment of the chancery court.

I. FACTS
¶ 4. Appellee Geoffrey Johnathan Steptoe and Appellant Elizabeth Ann Burnham Steptoe married on October 18, 1992. Before and during their marriage, the parties pursued several business endeavors, including Abbey National Transport, National Lodging, Import Fashions, and Times Change. Prior to the marriage, Mr. Steptoe lived in Ms. Steptoe's Jackson apartment until he bought a home in Canton. After they married, the parties resided in the house which Mr. Steptoe purchased. They separated and reconciled several times during the four year marriage, and Ms. Steptoe would move into her parents' home in Forest, Mississippi, during the periods of separation.
¶ 5. Ms. Steptoe filed her complaint for divorce with the Madison County Chancery Court on January 25, 1996. She cited grounds of habitual cruel and inhuman treatment and, in the alternative, irreconcilable differences. After extensive discovery efforts and numerous pleadings, the parties agreed to a divorce on the grounds of irreconcilable differences, and the chancellor rendered his order granting the divorce on October 2, 1996. Ms. Steptoe was awarded custody of the minor children subject to Mr. Steptoe's visitation rights as set out in the order.
¶ 6. An order of temporary relief remained in effect pending a trial to determine child support, alimony, marital property division, and attorney's fees. The trial occurred during November and December of 1996.

II. PROCEEDINGS BELOW
¶ 7. In addition to hearing testimony from the parties, the chancellor appointed an accountant to conduct an audit for the purpose of valuing Mr. Steptoe's business. The court also heard testimony from an accountant hired by Ms. Steptoe to value Mr. Steptoe's business. The court noted that Mr. Steptoe would have to pay twenty percent (20%) of his adjusted gross income for child support.
¶ 8. The chancellor acknowledged that determining accurate financial information as to Mr. Steptoe's income was difficult. Thus, the court utilized the financial information provided by the court-appointed auditor who reviewed Mr. Steptoe's limited records and information that Mr. Steptoe provided after the court-appointed auditor completed his report. After subtracting an amount from Mr. Steptoe's personal draw that Mr. Steptoe established was used for business expenses, the chancellor converted the draw from the business over a nine month period to a figure reflecting Mr. Steptoe's gross salary for a twelve *1230 month period. Because Mr. Steptoe provided no information about taxes, social security contributions or mandatory retirement contributions, the chancellor estimated the deductions to ascertain Mr. Steptoe's adjusted gross income of $33,425.
¶ 9. Based upon its calculation, the court ordered Mr. Steptoe to pay $557 on a monthly basis for child support and to maintain the medical insurance coverage of his children. The parties would share equally in the costs of uncovered medical expenses. Mr. Steptoe was required to obtain a life insurance policy for at least $50,000 naming his children as co-beneficiaries and allowing Ms. Steptoe to administer the funds if the policy were paid.
¶ 10. The court concluded that two businesses, Abbey National and National Lodging, and the house where the parties lived while they were married were marital assets subject to equitable distribution. The chancellor calculated the value of the house and the businesses and addressed the "Ferguson Factors" developed by the Mississippi Supreme Court.[1] Basing his decision upon these factors, he awarded Ms. Steptoe half the equity in the house and half the value of National Lodging. The court also held Ms. Steptoe responsible for half the remaining debt of Abbey National, and that debt was offset against her share in the house equity and National Lodging.
¶ 11. The court considered the appropriate factors and denied Ms. Steptoe permanent periodic alimony.[2] The court also assessed factors such as the brevity of the marriage and the lack of financial security of both parties and refrained from awarding lump sum alimony to Ms. Steptoe.[3] In spite of the court's decision to deny permanent periodic alimony and lump sum alimony, the court awarded "rehabilitative periodic alimony" in the amount of $300 per month for twenty-four (24) consecutive months to provide Ms. Steptoe financial assistance as she works to become self-supporting. Furthermore, the court ordered Mr. Steptoe to continue making payments on the Trooper automobile for twenty-four (24) months or until it is paid in full, whichever occurs first, while Ms. Steptoe would have to purchase the tag and maintain insurance on the Trooper.
¶ 12. In response to Ms. Steptoe's request for attorney's fees and costs of litigation, the court considered evidence submitted by her attorney. Although he found that her attorney's fees were reasonable, the chancellor determined that not all of the work was reasonably required. Of the $21,812 requested, the court awarded $10,000 to Ms. Steptoe and required her to pay for the services of the expert whom she hired.
¶ 13. The court calculated that Mr. Steptoe owed Ms. Steptoe $10,502, her share of the marital property after her half of the equity was reduced by her half of the undisputed debt, and $10,000 in attorney's fees. From the total of $20,502, the court deducted $15,600 for Ms. Steptoe's share of the debt of Abbey Transport which was being disputed in an Illinois court. The chancellor ordered Mr. Steptoe to pay the remainder to Ms. Steptoe in two installments of $2,451, the first installment to be paid on or before May 15, and the second installment to be paid on or before August 15, 1997.

III. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES
¶ 14. Ms. Steptoe fails to cite authority to support some of her assertions *1231 of error. Failure to cite relevant authority obviates the appellate court's obligation to review such issues. Williams v. State, 708 So.2d 1358 (¶ 12) (Miss.1998); Grey v. Grey, 638 So.2d 488, 491 (Miss.1994); McClain v. State, 625 So.2d 774, 781 (Miss. 1993); Smith v. Dorsey, 599 So.2d 529, 532 (Miss.1992). Consequently, this Court is permitted to disregard certain issues Ms. Steptoe raises on appeal. See Edlin v. State, 533 So.2d 403, 409-10 (Miss.1988) (holding that "[i]t is the duty of the appellant to overcome the presumption of the correctness of the trial court's judgment by demonstrating some reversible error").

A. STANDARD OF REVIEW
¶ 15. "As to division of marital assets, it is the broad inherent equity powers of the chancery court that give it the authority to act." Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss.1994). The reviewing court will not disturb the chancellor's findings absent a determination that the chancellor "was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Ferguson, 639 So.2d at 930, (citing Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990)); see also Sarver v. Sarver, 687 So.2d 749, 753 (Miss. 1997); Pittman v. Pittman, 652 So.2d 1105 (Miss.1995); Jernigan v. Jernigan, 625 So.2d 782, 784 (Miss.1993). The supreme court has emphasized that findings of the chancellor which are supported by credible evidence and are not manifestly wrong will be upheld, especially "in the areas of divorce and child support." Ferguson, 639 So.2d at 930, citing Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990); Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989); see also Sarver, 687 So.2d at 753.

B. CHILD SUPPORT
Ms. Steptoe's first issue: Did the trial court err in its methodology in calculating Mr. Steptoe's adjusted gross income, upon which it based its assessment of monthly child support, thereby committing manifest error and abusing its discretion?
¶ 16. Ms. Steptoe asserts that the chancery court "engaged in speculation" in calculating Mr. Steptoe's annual income. Because Mr. Steptoe did not have a set salary, the chancellor used current information to project the amount of money that Mr. Steptoe would withdraw from his business in one year to pay personal expenses. The chancellor subtracted $12,700 from the draw after Mr. Steptoe provided documentation that $12,700 was used for extraordinary, non-recurring expenses. Then, the chancellor expanded the nine month draw amount reported by the court-appointed auditor to a twelve month draw by dividing by .75. In this manner, he determined that Mr. Steptoe's annual gross salary is $47,750.
¶ 17. Ms. Steptoe offers no authority to support her assertion that the chancellor's methodology resulted in manifest error. She mischaracterizes the chancellor's technique, suggesting that the court abused its authority by "arbitrarily" deducting taxes and social security payments in an amount equal to thirty percent (30%) of Mr. Steptoe's gross income. As the court noted, the thirty percent (30%) deduction was a standard estimate, and the record includes no evidence that Mr. Steptoe would not be subject to the standard tax liability for his income.
¶ 18. After calculating Mr. Steptoe's annual adjusted gross income of $33,425, the chancellor required Mr. Steptoe to pay twenty percent (20%) of that income as child support for the two children, pursuant to the guidelines delineated in Miss. Code Ann. § 43-19-101 (Supp.1998). This determination resulted in an award to Ms. Steptoe of $557 per month for child support. In addition to the child support, the lower court further ordered Mr. Steptoe to maintain medical insurance covering the *1232 two children, to pay half of any uncovered medical expenses, and to obtain a life insurance policy for at least $50,000 naming the children as beneficiaries. Through the requirement for child support and the additional obligations placed upon Mr. Steptoe, the chancery court provided for the "care, custody and maintenance of the children of the marriage...." Miss.Code Ann. § 93-5-23 (Supp.1998).
¶ 19. Discerning that the trial court's determination was neither manifestly wrong nor clearly erroneous and that the correct legal standard was applied, we affirm the award of child support in the amount of $557 per month.

C. ALIMONY

Ms. Steptoe's sixth issue: Did the trial court err in failing to award either lump sum or permanent periodic alimony to Ms. Steptoe?
¶ 20. "Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion." Ethridge v. Ethridge, 648 So.2d 1143, 1146 (Miss.1995), (citing Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993)); see also Sarver v. Sarver, 687 So.2d 749, 756 (Miss.1997); Creekmore v. Creekmore, 651 So.2d 513, 517 (Miss. 1995). The chancellor considered the factors for determining whether to award alimony that the supreme court listed in Armstrong. He based his decision to deny permanent periodic alimony upon the brevity of the marriage, the considerable child support that was awarded to Ms. Steptoe, and Mr. Steptoe's significant indebtedness.
¶ 21. The trial court addressed the issue of lump sum alimony by examining the factors specified in Cheatham v. Cheatham, 537 So.2d 435 (Miss.1988). Those factors include (1) whether the spouse seeking lump sum alimony made a substantial contribution to the potential payor's accumulation of wealth, (2) length of the marriage, (3) disparity between the separate estates, and (4) whether the spouse seeking lump sum alimony would lack financial security in the absence of an award of lump sum alimony. Cheatham, 537 So.2d at 438; see Magee v. Magee, 661 So.2d 1117, 1123 (Miss.1995); Bland v. Bland, 629 So.2d 582, 583 (Miss.1993). In Cheatham, the Mississippi Supreme Court noted that "the single most important factor undoubtedly is the disparity of the separate estates." Cheatham, 537 So.2d at 438. In the case sub judice, the chancellor remarked on the relatively short marriage, the minimal disparity between the separate estates, and the fact that neither party experienced financial security. Based upon these findings, the chancellor concluded that Ms. Steptoe was not entitled to an award of lump sum alimony.
¶ 22. The chancery court recognized that Ms. Steptoe should receive some form of alimony to facilitate her efforts to become self-supporting. Accordingly, the chancellor awarded rehabilitative periodic alimony in the amount of $300 per month for twenty-four (24) months. The chancellor cited Hubbard v. Hubbard, 656 So.2d 124, 131 (Miss.1995), in which the court stated, "Rehabilitative periodic alimony is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim." In that case, the supreme court determined that for a marriage of only four years, equity did not require more than a time-limited award. Hubbard, 656 So.2d at 130. To further aid Ms. Steptoe, the chancellor required Mr. Steptoe to continue making payments on Ms. Steptoe's Trooper automobile for twenty-four (24) months or until it was completely paid, whichever occurs first.
¶ 23. We find that the chancellor considered the appropriate factors in determining whether to award permanent periodic *1233 alimony or lump sum alimony. Discerning no manifest error or abuse of discretion in the lower court's conclusion, we resolve this issue adversely to Ms. Steptoe.

D. EQUITABLE DISTRIBUTION
¶ 24. The factors to be considered by the chancery court in the equitable distribution of marital property include:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). The chancellor is not required to address each and every factor and may consider only the factors which he finds applicable to the marital property at issue. Weathersby v. Weathersby, 693 So.2d 1348, 1354 (Miss.1997); Carrow v. Carrow, 642 So.2d 901, 907 (Miss.1994). In Ferguson, the supreme court instructed chancellors to include support for their findings of fact and conclusions of law in their orders so that their decisions may be reviewed on appeal. MacDonald v. MacDonald, 698 So.2d 1079 (¶ 17) (Miss.1997).
¶ 25. In order to divide the marital assets, the chancery court must first determine which assets are marital and which assets are non-marital. Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1995). Then, the chancellor may divide the marital assets of the parties as equity requires. Johnston v. Johnston, 722 So.2d 453 (¶ 12) (Miss.1998), (citing Ferguson, 639 So.2d at 929). This Court recognizes that "[a]ll property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together." Henderson v. Henderson, 703 So.2d 262 (¶ 18) (Miss.1997), (quoting Ferguson, 639 So.2d at 929). As the chancellor noted in the present case, Ms. Steptoe was not entitled to receive permanent periodic alimony, so any financial security she might retain depended on the equitable distribution of the marital property. The chancellor addressed the applicable factors and explained his findings in his written order.

*1234 1. Ms. Steptoe's fourth issue: Did the trial court err in deducting from Ms. Steptoe's share of marital assets any debt owed as a result of her participation in the business "Times Change?"

¶ 26. Although Ms. Steptoe lists this issue among her assignments of error, she offers no argument supporting her assertion that the trial court erred in offsetting the amount Mr. Steptoe should pay Ms. Steptoe by half of the debt in Times Change. Upon review, we are perplexed by this assignment of error inasmuch as the evidence shows that Ms. Steptoe was wholly responsible for Times Change and that Mr. Steptoe did not participate in this business venture. Ms. Steptoe testified, "I started my own business called Times Change, not with his help and support...." She indicated that she was in charge of that business from its inception and that Mr. Steptoe was not involved with it. Yet, Ms. Steptoe complains that the chancellor should have compelled Mr. Steptoe to pay all of the debt for Times Change rather than dividing it as a marital liability and requiring each party to pay half. Ms. Steptoe's allegation that the lower court committed error by requiring her to pay half of the debt of Times Change is inconsistent with her testimony about that business. Absent manifest error on the part of the lower court, we decide this issue adversely to Ms. Steptoe.

2. Ms. Steptoe's fifth issue: Did the trial court commit manifest error when it deducted from Ms. Steptoe's share of the marital assets half the debt incurred in the operation of Abbey National Transport prior to the marriage?
¶ 27. As Mr. Steptoe notes on appeal, Ms. Steptoe and her attorney "went to great lengths to prove that Ms. Steptoe was a partner in the businesses." Although Ms. Steptoe stated that she did not make any decisions regarding the debts incurred by any of the businesses, she acknowledged that her name, driver's license number, and social security number were used on business documents. When queried about her involvement in the businesses, she responded, "I participated in every business that we've had, sir." She detailed her extensive involvement in Abbey National, noting that "we [Mr. Steptoe and Ms. Steptoe] built it together ... from the paper work up." Acknowledging that Abbey National was created prior to the marriage, Ms. Steptoe notes that it was formed while she and Mr. Steptoe were living together shortly before their marriage. She testified that she applied for permits and ICC numbers, ran errands, handled the banking, and answered the telephone.
¶ 28. Having proven that she was a partner in the businesses, including Abbey National, Ms. Steptoe does not have the luxury of asserting an interest in the assets without accepting responsibility for the liabilities. In providing for equitable distribution, the chancellor cannot be required to consider Abbey National to be marital property for dividing the assets and then consider Abbey National to be non-marital property for allocating the liabilities.
¶ 29. We affirm the trial court's deduction of one-half of Abbey National's debt from Ms. Steptoe's half of the marital property.

3. Ms. Steptoe's third issue: Did the trial court err in its calculation of the value of National Lodging, thereby committing manifest error in the equitable distribution of marital assets?
¶ 30. Ms. Steptoe cites no authority to support her assertion that the trial court's calculation of the value of National Lodging was erroneous. However, we will address this issue briefly.
¶ 31. Ms. Steptoe asserts that the chancery court undervalued National Lodging *1235 because it "arbitrarily deducted a speculative `salary' amount of $47,789 for Mr. Steptoe's benefit." As we have already stated, the chancellor remained within his discretion in determining Mr. Steptoe's annual salary. Ms. Steptoe further charges that her expert was "the only witness to testify as to the value of National Lodging." We note that Ms. Steptoe's expert, Mr. Downs, testified not only to the value of the business, but also to the method which he used to calculate that value. In calculating that value, Mr. Downs relied on the court-appointed accountant's evaluation of the business in applying a different methodology. The chancellor recognized a possible flaw in Mr. Downs's methodology and re-calculated the value with an additional step in which he reduced the net income by the amount of Mr. Steptoe's salary. Ms. Steptoe argues that her expert took into account the higher risk associated with a key employee business and that no salary expense should be deducted from the net profit of the business.
¶ 32. While Mr. Steptoe's key role in the business was appropriately factored into the calculation of the value of National Lodging, considering that factor does not preclude deduction of a salary expense in assessing the value of the business. The chancery court established Mr. Steptoe's salary from National Lodging, and that expense should not be ignored in determining the business's value. The chancellor's calculations were based upon values and methods supported by testimony in the record. Therefore, we decline to characterize the deduction of the salary expense as "arbitrary," and we find no manifest error. Thus, we affirm the lower court's conclusion as to this issue.

4. Ms. Steptoe's second issue: Did the trial court err when it failed to either grant exclusive use of the marital home to Ms. Steptoe or to require Mr. Steptoe to provide Ms. Steptoe and the minor children of the parties a place to live?
¶ 33. While the trial court did allow Mr. Steptoe to continue to conduct his business and to reside in the marital home, it also ordered Mr. Steptoe to pay to Ms. Steptoe the value of one-half (½) of the parties' equity in the house. The chancellor applied the appropriate law in establishing an equitable distribution of marital assets as he considered the factors enumerated in Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). His deliberation on these factors resulted in his conclusion that Ms. Steptoe was entitled to one-half (½) of the equity in the marital home, one-half (½) of the value of National Lodging, and one-half (½) the debt of Abbey National.
¶ 34. One of the Ferguson factors that is particularly applicable to the distribution of the value of the home is "the extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties." Ferguson, 639 So.2d at 928. For one party to continue to live in the marital home, that party must pay to the other party the amount of the other party's share of the equity in order to eliminate the shared home ownership, which would be a potential source of future friction. The chancery court required Mr. Steptoe to pay to Ms. Steptoe half of the amount of equity they had in the marital home. Likewise, if Ms. Steptoe and her children were allowed to reside in the marital home instead of Mr. Steptoe, Ms. Steptoe would owe to Mr. Steptoe half of the equity.
¶ 35. Upon reviewing the chancellor's application of the Ferguson factors, we find nothing to indicate that the lower court failed in its equitable distribution of the assets and liabilities of the parties. Discerning no manifest error, we affirm the chancery court's order providing to Ms. Steptoe one-half (½) the equity in the marital home.

E. ATTORNEY'S FEES AND COSTS OF LITIGATION

*1236 Ms. Steptoe's seventh issue: Did the trial court commit manifest error in failing to award adequate attorney's fees and litigation expenses incurred by Ms. Steptoe in these proceedings, including the fees of her certified public accountant?

¶ 36. "Generally the award of attorney's fees in a divorce case is left to the discretion of the trial court." Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss.1988) (citations omitted); see also Sarver v. Sarver, 687 So.2d 749, 755 (Miss. 1997); Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Absent an abuse of discretion or manifest error, the chancellor's decision about attorney fees will not be disturbed by the reviewing court. Creekmore v. Creekmore, 651 So.2d 513, 520 (Miss.1995); Armstrong, 618 So.2d at 1282.
¶ 37. The supreme court has established the criteria to be analyzed in determining whether to award attorney fees in McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). Watson v. Watson, 724 So.2d 350 (¶ 29) (Miss.1998); Ferguson, 639 So.2d at 937. Those criteria include (1) "relative financial ability of the parties;" (2) the "skill and standing of the attorney employed," (3) novelty and difficulty of issues in the case, (4) the responsibility required in managing the case, (5) "time and labor required," (6) the "usual and customary charge" in the community, and (7) whether the attorney was precluded from undertaking other employment by accepting the case. McKee, 418 So.2d at 767.
¶ 38. The chancellor scrutinized these factors as they relate to the case sub judice. He alluded to Ms. Steptoe's inability to pay her attorney's fees, which totaled $21,812, and Mr. Steptoe's "unwillingness to cooperate in discovery and his attempts at ex parte communication with the [c]ourt" which required Ms. Steptoe to file several motions. The chancellor determined that Ms. Steptoe should be awarded attorney's fees.
¶ 39. Although he concluded that Ms. Steptoe's attorney's fees were reasonable, the chancellor also considered the supreme court's instructions, as stated in McKee:
We are ... of the opinion the allowance of attorneys fees should be only in such amount as will compensate for the services rendered. It must be fair and just to all concerned after it has been determined that the legal work being compensated was reasonably required and necessary.
McKee, 418 So.2d at 767. In the instant case, the chancellor opined that not all of the attorney's work was reasonably required. Thus, he awarded Ms. Steptoe only $10,000 in attorney's fees.
¶ 40. Ms. Steptoe objects to the chancellor's requiring her to pay Mr. Downs, the expert whom she hired, and she asserts that Mr. Downs was the only witness to testify as to the value of National Lodging. However, the court had already appointed an expert, Mr. Butchart, to assess and testify regarding the value of that business. The chancery court ordered Mr. Steptoe to pay for the expert appointed by the court. Mr. Butchart testified, and Mr. Downs based his calculations upon Mr. Butchart's testimony. Therefore, the court could have derived the value of National Lodging based solely upon Mr. Butchart's testimony. The chancellor remained within his discretion in requiring Ms. Steptoe to pay for the additional expert whom she elected to employ.
¶ 41. Given the discretion granted to the chancellor in deciding the issue of attorney fees, and discerning no manifest error, we affirm the chancellor's decision.

IV. CONCLUSION
¶ 42. We find that the trial court's determination of Mr. Steptoe's annual adjusted *1237 gross income was not manifestly wrong and that the correct legal standard was applied. Therefore, this Court upholds the award of child support in the amount of $557 per month.
¶ 43. The evidence supported the fact that Ms. Steptoe was solely in charge of Times Change, and that she participated as a partner in the formation and business proceedings of Abbey National. The chancery court committed no error in holding her responsible for half the debt of each of those businesses. Furthermore, the chancery court's calculation of the value of National Lodging was within its discretion, and the deduction of a salary expense from the net income of that business did not constitute manifest error.
¶ 44. The lower court considered the required factors in providing for the equitable distribution of the assets and liabilities of the parties and in awarding to Ms. Steptoe one-half (½) the equity in the marital home. The chancellor also considered that appropriate factors in deciding not to award permanent periodic alimony or lump sum alimony. Thus, we affirm the trial court's determination to award only rehabilitative periodic alimony.
¶ 45. Finally, we acknowledge the chancellor's discretion in awarding attorney fees, and we affirm the $10,000 award to Ms. Steptoe for attorney fees and the requirement that Ms. Steptoe pay the fee for the expert that she hired.
¶ 46. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., DIAZ, LEE, AND MOORE, JJ., CONCUR.
PAYNE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION JOINED BY IRVING AND THOMAS, JJ.
PAYNE, J., concurring in part, dissenting in part:
¶ 47. While I concur with the ultimate result reached in this case with regard to the award of child support and with regard to the provisions made for the children, I must dissent as to the division of the marital assets between Mr. Steptoe and Ms. Steptoe.
¶ 48. On paper the division of marital assets appears equitable and mathematically balanced. However, a closer examination reveals a substantial disparity against Ms. Steptoe which greatly diminishes her opportunity to start afresh financially.
¶ 49. This Court has concluded Ms. Steptoe was a partner with her husband to the Abbey National and National Lodging businesses. Consequently, she benefits from those businesses' profits and also must bear her share of each business's respective debts. To this end the majority has split the equity in National Lodging and the debt in Abbey National fifty-fifty between Mr. Steptoe and Ms. Steptoe. While this seems fair, after Ms. Steptoe gets her respective share of each business, she is unjustifiably left with nothing. Contrarily, Mr. Steptoe is left with ownership of each business whereby he has an opportunity to generate profits from these businesses in the future.
¶ 50. My quarrel with a division such as this is the Court should take into consideration the liquid assets each party is given respectively. In Ms. Steptoe's situation, she received approximately $44,100 debt in Abbey National, $29,700 equity in National Lodging and $9,400 equity in the marital home. Subtracting the debt from her equity, Ms. Steptoe is left in the red $5,000. Additionally, she is left with no home for herself and her children, no business with which to generate future funds and was awarded less than half her attorney's fees and must pay the difference of $11,000. In *1238 my opinion, it is highly inequitable to give Ms. Steptoe this equity, then burden her with the debts to the point she is left with nothing in the form of liquid assets while Mr. Steptoe is left with both businesses as well as the marital home.
¶ 51. Equity and justice require a more evenhanded distribution of marital assets, including an evaluation into what assets can be liquidated and what assets cannot. The court should adhere to the admonition in Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994), in which the Mississippi Supreme Court stated, "[F]airness is the prevailing guideline in marital division." A fair evaluation into the Steptoes's situations would have certainly resulted in a different outcome than was reached here. Accordingly, I respectfully dissent to the division of the marital assets in this case.
¶ 52. Further, I would advise this Court that an award of attorney's fees would be proper to Ms. Steptoe incident to this appeal. In the recent case of Shorter v. Shorter, 740 So.2d 352 ¶ 30 (Miss.Ct.App. 1999), this Court stated "[T]he established practice is to award one-half the attorney's fees award made in the trial court." See also Clements v. Young, 481 So.2d 263, 271 (Miss.1985). Thus, consistent with our established practice of awarding attorney's fees in such matters, it would be prudent in this case to award Ms. Steptoe $5,000, one-half her attorney's fees incurred with this appeal.
IRVING, AND THOMAS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] See Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994).
[2] See Ethridge v. Ethridge, 648 So.2d 1143, 1146 (Miss.1995) for a list of factors considered in determining an award of permanent periodic alimony.
[3] See Cheatham v. Cheatham, 537 So.2d 435 (Miss.1988) for a list of factors considered in determining an award of lump sum alimony. The chancellor in the instant case addressed these factors.