# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2000-CA-01259-COA

**ROBERT EDWIN BUNYARD**                                                  **APPELLANT**

**v.**

**SHEILA KAY BUNYARD**                                                     **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 03/29/2000 |
| TRIAL JUDGE: | HON. SARAH P. SPRINGER |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | EARL P. JORDAN JR. |
| ATTORNEYS FOR APPELLEE: | WILLIAM B. JACOB |
| | DANIEL P. SELF JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | DIVORCE AWARDED TO WIFE. PROPERTY DISTRIBUTED. |
| DISPOSITION: | AFFIRMED - 09/18/2001 |
| MOTION FOR REHEARING FILED: | 10/17/2001; denied 12/18/2001 |
| CERTIORARI FILED: | 1/17/2002; granted 3/21/2002 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., BRIDGES, AND MYERS, JJ.

MYERS, J., FOR THE COURT:

¶1. Sheila Kay Bunyard and Robert Edwin Bunyard were married on March 6, 1992. They lived as husband and wife for six years in Lauderdale County, Mississippi and had no children. They separated in April 1998 and Sheila filed for divorce in Lauderdale County on May 1, 1998. Robert filed a counter complaint for divorce on July 28, 1998. Both Robert and Sheila allege that the other is guilty of habitual cruel and inhuman treatment. Sheila's allegations, while denied by Robert, were supported by her daughter. Robert made admissions regarding his sexual relationship with another woman. He denied any physical relationship occurred before their separation. The trial court, with the Honorable Sarah P. Springer presiding, allowed Sheila to amend her pleadings to conform to the proof on the issue of adultery and a divorce was granted to Sheila on that ground. Feeling aggrieved, Robert now appeals the ruling of the chancery court on the following three issues.

**1. Whether the chancellor's ruling regarding the date of marital property was erroneous with**

**the effect being the application of an incorrect legal standard.**

**2. Whether the chancellor's ruling regarding the determination of whether the three acre tract of land was an inter vivos gift to Robert Bunyard or marital property was manifestly wrong and clearly erroneous.**

**3. Whether the chancellor's ruling regarding the distribution of marital property was manifestly wrong and clearly erroneous and the result of the application of an incorrect legal standard.**

Finding these issues to be without merit, we affirm the holding of the chancery court.

## FACTS

¶2. Sheila and Robert have lived together off and on since 1983. During the years before their marriage, Sheila moved out and lived with another man for short periods of time, which the trial court deemed unsubstantial. At the beginning of the live-in relationship, Sheila worked at Peavey Electronics and Robert still works for Maples Gas Company. Both contributed to the household expenses. Sheila did the cooking, cleaning, laundry, yard work, housekeeping and gardening prior to and during their marriage. Robert did not pay Sheila for these activities.

¶3. Sheila was diagnosed with multiple sclerosis prior to the marriage and Robert was fully aware of the diagnosis. In 1995 she applied for and received Social Security disability benefits because she was no longer able to work. She cashed in her retirement account with Peavey Electronics and used the $1,200 for household expenses. Her efforts were then devoted full time to the household.

¶4. At one point in time Sheila bought a house trailer and moved into it. Robert soon followed her. She then sold the trailer and they both moved into the home on Causeyville Road, using the proceeds from the sale of the house trailer for household expenses. This home on Causeyville Road belonged to Robert as he obtained title some ten years before in a previous divorce.

¶5. While Robert and Sheila were living together but before their marriage, Robert bought two additional parcels of property adjoining the marital home paying $19,000. Since the purchase of the additional 8.16 acres, the land has increased in value and been improved by the addition of a catfish pond, fencing and a pier. Robert submitted his income and expense statement to the court with the misleading value of $14,250 for the land which is titled solely in Robert's name.

¶6. Robert asserted that Sheila made no payments on the house or the land. He said that his father paid the balance owed to the Bank of Meridian for the land although he never offered proof of the amount paid by his father. Sheila did, however, work on the land with Robert putting up the fence, gardening, feeding the cows, and building the pier for the catfish pond. They ate the fish they caught and the vegetables Sheila grew in the garden.

¶7. In her ruling, Judge Springer held that Sheila Bunyard was granted a divorce on the ground of adultery. She was awarded the truck (Silverado) and the title as lump sum alimony, an antique cabinet, Singer sewing machine with cabinet, pots and pans, dishes and her personal items including her clothes and books. The insurance on the truck was to remain in effect until the term that Robert had paid for expired. Sheila was to receive periodic alimony in the amount of five hundred dollars per month, ceasing at Robert's death. Sheila

is to be responsible for her debts. She was also to receive three thousand dollars from Robert for her attorney's fees.

¶8. Robert was awarded the motor camper which was left to him by his father upon his father's death and the remaining household items. He was also awarded the marital home and the surrounding acreage. He will have exclusive ownership of his retirement funds. Robert was also ordered to pay Sheila $28,000 for her equitable interest in his retirement and land. Robert is responsible for paying the debts listed in his income and expense report. Cost of the appraisal of the land is taxed to Robert.

¶9. The trial court also ruled that each was solely responsible for the debts individually incurred post-separation. Robert must maintain life insurance in the amount of $100,000 naming Sheila as the beneficiary. Interest of eight percent per annum was ordered to run on all sums awarded in the judgment from and after the due date of such payments.

## STANDARD OF REVIEW

¶10. An appellate court will not reverse a chancellor's equitable division of marital property absent a determination that the chancellor's decision was clearly erroneous, manifestly wrong, an application of an erroneous legal standard or unsupported by substantial, credible evidence. *Burnham-Steptoe v. Steptoe*, 755 So. 2d 1225, 1231 (¶15) (Miss. Ct. App. 1999)(citing *Ferguson v. Ferguson*, 639 So. 2d 921, 927 (Miss. 1994)).

¶11. For division of marital assets, it must first be determined which assets are marital assets versus non-marital assets. *Steptoe*, 755 So. 2d at 1234 (¶25). Assets acquired during the course of marriage are marital assets and subject to equitable distribution unless it can be proven that such assets belonged to one of the separate estates prior to the marriage. *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994). Non-marital assets that are co-mingled with marital property or used for domestic purposes are converted into marital property. *Singley v. Singley*, 1999-CA-00754 (¶ 7) (Miss. Ct. App. Sept. 26, 2000).

## DISCUSSION

¶12. To characterize what constitutes marital property, the supreme court determined that it included the following:

> We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for the divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.

*Ferguson*, 639 So. 2d at 915.

¶13. Under the doctrine of equitable distribution, marriage is considered a partnership with both spouses contributing to the marital estate in the manner which they have chosen. *Ferguson,* 639 So. 2d at 927. We have chosen once again to list the *Ferguson* factors. They are as follows:

> 1. Substantial contribution to the accumulation of property

a. direct or indirect economic contribution

b. contribution to stability and harmony of the marital relationship measured by quality, quantity of time spent on family duties and duration of marriage.

c. contribution to the education, training bearing on the earning capacity of spouse accumulating assets.

2. Degree to which each spouse has expended, withdrawn, or otherwise disposed of marital assets and any prior distribution of assets.

3. Market value and emotional value of assets subject to distribution.

4. Value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse.

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution.

6. Extent to which property division may be utilized to eliminate periodic payments and other potential sources of friction.

7. Needs of the parties.

8. Any other factor which in equity should be considered.

*Id.* at 928.

¶14. The chancery court focused on *Ferguson* and *Davis v. Davis*, 643 So. 2d 931 (Miss. 1994), and rightly so. Both cases deal with the equitable division of property with *Ferguson* focusing on married couples and *Davis* discussing unmarried couples. The holding in *Ferguson* established the guidelines as noted above. *Davis* dealt with the added detail of a non-married couple. The ruling in *Davis* turned on the fact that there was "no entry into a ceremonial marriage or an innocent partner in a void marriage." *Davis*, 643 So. 2d at 936. In addition Mrs. Davis left the relationship with a fully furnished home, a new vehicle and a substantial cash savings. She was also paid a salary even when she no longer worked in Mr. Davis' business. The supreme court in *Davis* decided not to extend the rights of married people to those who merely cohabit by advocating "palimony" in light of the fact that the legislature had not done so. *Id.* at 936.

¶15. In this case, the relationship was ratified by a legal marriage in which both parties contributed to the maintenance of the homestead. Unlike *Davis*, and Mrs. Davis' more than equitable distribution, Sheila did not leave her marriage with a fully furnished home and a large sum of cash. She was awarded a truck and some monetary support that she needs to survive at a meager existence. They had a joint economy, pooling their incomes and working together toward the maintenance of their household. Sheila was also not paid for her work around the homestead by Robert.

¶16. We find no erroneous rulings, no manifest error and no abuse of discretion as to the equitable distribution of the property in this marriage. We also find nothing erroneous in the award of alimony and attorney's fees. We affirm.

¶17. THE JUDGMENT OF THE CHANCERY COURT OF LAUDERDALE COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.

McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, AND CHANDLER, JJ., CONCUR. BRANTLEY, J., NOT PARTICIPATING.