# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01258-COA

STEPHEN J. BULLOCK                                                    APPELLANT

v.

ALAINA L. BULLOCK                                                    APPELLEE

DATE OF JUDGMENT:            04/21/2015
TRIAL JUDGE:                 HON. SANFORD R. STECKLER
COURT FROM WHICH APPEALED:   HARRISON COUNTY CHANCERY COURT,
                             FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      DAVID ALAN PUMFORD
ATTORNEYS FOR APPELLEE:      YVETTE LOUISE STELLY
                             HERBERT J. STELLY
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:     DIVORCE JUDGMENT ENTERED;
                             POSTTRIAL MOTION SEEKING A NEW
                             TRIAL DENIED
DISPOSITION:                 AFFIRMED IN PART; REVERSED AND
                             REMANDED IN PART - 02/28/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., ISHEE AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Stephen and Alaina Bullock married in 1999, separated in 2007, and divorced on April 21, 2015. Stephen appeals from the final judgment of divorce, arguing that the trial court erred in the classification and division of certain assets, in refusing to admit certain proffered discovery, in the award of expert fees and attorney fees to Alaina, and in failing to perform

a *Ferguson* analysis[1] on the record.[2] We find no error in the chancellor's classification of marital assets or in the award of expert and attorney fees to Alaina. However, we find that the chancellor erred in failing to conduct a *Ferguson* analysis on the record. We therefore affirm in part, and reverse and remand in part for further proceedings.

**FACTS AND PROCEEDINGS BELOW**

¶2.    Stephen and Alaina's divorce trial began in June 2010. Earlier, in 2008, a temporary order had been drafted but was never entered on the court's docket. Alaina's attorney wrote to Stephen's attorney and indicated Alaina's intent, absent objection, to use the June 2010 start date of trial as the end of accumulation of assets of the marital estate. At the start of trial, Alaina's attorney noted that they had yet to receive responses to their request for combined discovery from Stephen. However, Alaina wished to waive receiving that discovery and move forward with trial to keep the expense of the divorce from increasing indefinitely.

¶3.    Stephen's attorney conceded that his client had been dilatory in responding to discovery and requested a continuance, which was denied. After one day of testimony, a matter came up that the chancellor determined required his recusal.[3] The trial was put on hold and a different chancellor assumed the case. On July 18, 2011, the new chancellor entered an order compelling Stephen's response to discovery. On August 17, 2011, the chancellor

---

[1] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

[2] The couple had no children of the marriage.

[3] The recusal is irrelevant to the issues on appeal.

2

entered an order appointing a forensic accountant to produce a report evaluating the assets of the marital estate as of the date of the report. The report was issued on January 31, 2012. Alaina's forensic accountant, Jerry Levens, also produced a report on the parties' assets and reviewed the findings of the court-appointed accountant. Levens used the June 2010 start date of trial as the cut-off date of accumulation of marital assets. Levens's report was significantly broader in scope and detail than that of the court-appointed accountant. The court-appointed accountant identified and listed the assets of the parties, but did not arrive at values for the marital homes, opine as to the net worth of the parties, or arrive at a final number. It also did not identify Stephen's investment in Landing Gear, returns on that investment, or the loan to Coast Cycle World.[4]

¶4. When trial resumed in 2014, the court denied another request from Stephen for a continuance in order to conduct discovery.[5] Both forensic accountants testified at trial. The chancellor announced on the record that the contributions of both experts were credible,

---

[4] The court-appointed accountant's report was subsequently amended to correct errors initially present in the report, including the error of classifying as Stephen's personal debt a $205,952 tax debt actually belonging to the business Coast Cycle World. The initial report also identified a vehicle as belonging to Stephen that actually belonged to Coast Cycle World.

[5] The chancellor adopted the transcript of the previous day of trial in June 2010, which included the testimony of Alaina and Alaina's expert property appraiser. Prior to trial resuming, Alaina filed a motion requesting that the court determine a cut-off date for the purposes of determining the marital assets owned by the parties. Alaina asserted that this should be the date that trial started in January 2010. In response to Alaina's motion to determine the cut-off date, the record contains an email from the court indicating that the cut-off date would be August 19, 2008, the date of the original temporary hearing from which an order should have been but was not entered. This date was never formalized with an order.

3

helpful, and operated to supplement each other.

¶5.    Stephen entered the marriage with an interest in several real-estate properties. He received $22,917 for one property sold in 2000 and $67,000 for the other sold in 2003. Stephen also claimed at trial to have entered the marriage with approximately $75,000.

¶6.    Alaina entered the marriage owning a piece of real property know as the Eagle Point property. During the marriage, this property was used as collateral for a loan to purchase a marital home. At some point during the marriage, Stephen hired a contractor to build a boat ramp on the Eagle Point property, but failed to pay for the work. Alaina eventually paid the contractor's lien from the proceeds of the sale of the property in 2003.

¶7.    Later in the marriage but prior to the separation, Stephen made a $120,000 loan to his parents' business, Coast World Cycling, and a $100,000 investment into a business called Landing Gear. The investment had produced returns and was still producing returns at the time of trial. Stephen testified, without providing any supporting financial documentation, that he made the investment and the loan with nonmarital monies. In addition to the investment and loan, Stephen claimed to have expended nonmarital funds for other purposes, including over $47,000 for treatment for alcohol addiction. Alaina testified that Stephen also made an approximately $30,000 unsuccessful investment in a third business. Stephen acknowledged making an investment but denied that it was as much as $30,000.

¶8.    Leading up to trial, Stephen had provided no written response to Alaina's discovery request for Stephen to "produce copies of all items of physical or documentary evidence which you intend to introduce at trial on the merits in this cause." Yet at trial, Stephen

4

proffered as evidence checks purportedly demonstrating that, during the marriage, Alaina used marital funds to reimburse Stephen for expenses that were supposed to have been made with separate funds. The court refused to admit the evidence due to the absence of written responses to the request for discovery and also because Alaina's attorney claimed that the discovery itself had never been delivered to him. Later, the parties confirmed that a disorganized, unlabeled box of miscellaneous discovery had in fact been dropped off at Alaina's attorney's office.[6] Stephen moved to reopen the case to admit the evidence. At the hearing on Stephen's motion to reopen the case, Stephen's attorney offered for Stephen to bear the expense of any fees incurred by Alaina's expert for evaluating the belatedly produced discovery. The court informed the parties that, if he reopened the case, Stephen would be liable for Alaina's attorney fees related to reopening the case.

¶9.     The court granted the motion to reopen the case and ordered Stephen's attorney to properly answer discovery immediately, to attach the discovery documents to the answers, and to give Alaina's attorney a list of questions he intended to ask so that Alaina's attorney could determine if those documents were in the box delivered and that Stephen's questions were limited to such documents. Stephen never complied with this directive. After two continuances requested by Stephen, Stephen refused to attend the evidentiary hearing, instead conferring with his attorney in the court parking lot and leaving. His attorney explained to the court that Stephen was attending a mud-derby event, and provided the mud-derby brochure to the court and asserted that, in his opinion, his client's actions were due to an

---

[6] The transcript does not indicate exactly when the box was delivered.

5

apparent emotional breakdown. The court denied Stephen's third motion for a continuance and closed the case.

¶10. After the close of trial, the parties agreed to the classification and division of two marital homes, Alaina's car, a timeshare, and several smaller items. By agreement of both parties, the only issues remaining for the court to decide were the classification and division of the Eagle Point property, the classification and division of the funds loaned and invested in Landing Gear and Coast Cycle World, whether to grant Alaina spousal support, and attorney fees.

¶11. The final judgment of divorce was entered on April 21, 2015. The final judgment states that, in light of the absence of a temporary order, the date of judgment would be considered as the end of the accumulation of assets of the marital estate. The court classified the Eagle Point property as nonmarital, holding that the use of Alaina's separate property as collateral for the marital home did not operate to convert the property into marital property. The chancellor determined that Stephen failed to overcome the legal presumption that the loan and the investment had been made with marital funds and awarded Alaina a judgment against Stephen amounting to fifty percent of the loan to Coast Cycle World, and a judgment entitling her to fifty percent of received and future returns on the investment in Landing Gear. The court denied Alaina spousal support. The court ordered Stephen to pay fifty percent of Levens's expert accounting fees related to the initial trial, and ordered Stephen to pay all of Levens's fees and all of Alaina's attorney fees related to reopening the case.

¶12. Stephen appeals.

## DISCUSSION

¶13. A chancellor's findings will not be disturbed upon review unless the chancellor was manifestly wrong or clearly erroneous, or applied an incorrect legal standard. *A.B. v. Y.Z.*, 60 So. 3d 737, 739 (¶11) (Miss. 2011). In a divorce action, chancellors first classify assets as marital or nonmarital, then equitably distribute the marital assets between the parties using the *Ferguson* factors as guidance. *Barnett v. Barnett*, 908 So. 2d 833, 838 (¶9) (Miss. Ct. App. 2005).

### I. The chancellor did not err in his classification of assets.

### A. The chancellor did not err in his demarcation of the end of the marital estate.

¶14. Stephen argues that the chancellor erred in naming the date of the final judgment as the date of the end of accumulation of assets of the marital estate. The record reflects that a great deal of confusion existed throughout the whole proceeding concerning what date would be used—a confusion compounded by the absence of a temporary order prior to trial, the change of chancellors mid-trial, the use of two forensic accountants, and the fact that the trial spanned seven years. Chancellors are afforded a great deal of discretion in determining the cut-off date for accumulation of marital assets. *Collins v. Collins*, 112 So. 3d 428, 432 (¶11) (Miss. 2013) (affirming chancellor's use of date of divorce as point of demarcation). "The law in Mississippi is that the date on which assets cease to be marital and become separate assets—what we refer to . . . as the point of demarcation—can be 'either the date of separation (at the earliest) or the date of divorce (at the latest).'" *Id*. at 431-32 (¶9) (quoting *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶27) (Miss. 2009)).

¶15. Prior to the issuance of the chancellor's final order, the parties agreed to limit the assets for the court's determination to the Eagle Point property, the Landing Gear investment, and the Coast Cycle World loan. The record does not indicate, and Stephen does not submit, how the court utilizing an earlier date would make any difference to the classification of the three assets ultimately submitted for the chancellor's determination. All facts relevant to classifying those assets occurred prior to the date of separation, which is the earliest permissible date of demarcation. On the facts of this case, we do not find that the chancellor erred in naming the date of judgment as the end of the accumulation of the marital estate.

### B. The chancellor did not err in classifying the Eagle Point property as nonmarital.

¶16. We agree with the chancellor that the couple's use of Alaina's nonmarital Eagle Point property as collateral for a loan to buy a marital home did not operate to convert the Eagle Point property into marital property. *See Jones v. Jones*, 904 So. 2d 1143, 1146 (¶6) (Miss. Ct. App. 2004) (affirming chancellor's classification of wife's property as separate when land had been used to secure loan to build marital home). Stephen argues that, even if the use of the property as collateral was too attenuated, his efforts to improve the Eagle Point property by having a boat ramp built was sufficient activity to convert the property to marital use. Stephen contracted someone to build the boat ramp without Alaina's permission and then did not pay for the completed work. Alaina paid off the subsequent contractor's lien from the sale of the property. The chancellor did not abuse his discretion in finding that Stephen's activity was insufficient use to convert the property into a marital asset. *See Hankins v. Hankins*, 729 So. 2d 1283, 1287 (¶15) (Miss. 1999) (finding spouse planting trees on

nonmarital land insufficient to convert land to marital property where no evidence of agreement between couple that planting trees would create marital interest in property and no evidence as to value of trees).

¶17.    We also disagree with Stephen's argument that the chancellor erred in failing to specifically discuss in the final order the court-appointed forensic accountant's initial classification of the Eagle Point property as marital. That classification went directly to the disputed legal question of whether the use of the property as collateral for a loan to purchase marital property affected the status of the collateral— a question the chancellor identified and discussed in his final order. We also note that at trial the court-appointed forensic accountant stated that the court should determine how the property should be properly classified. This issue is without merit.

> **C.    The chancellor did not err in classifying the loan to Coast Cycle World and the investment in Landing Gear as marital.**

¶18.    All assets earned or accrued during the course of the marriage are presumed to be marital property. *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994). However, an asset may be classified as nonmarital if it is accrued by means of one spouse's separate funds. *Ferguson*, 639 So. 2d at 929. The party claiming separate property classification "bears the burden of tracing the asset to a separate-property source." *Allgood v. Allgood*, 62 So. 3d 443, 447 (¶13) (Miss. Ct. App. 2011) (citation omitted).

¶19.    Stephen argues that the investment in Landing Gear was improperly classified as marital, and that the loan to Coast Cycle World was significantly less than $120,000. Stephen

9

had the burden below to demonstrate that the funds used for the loan to Landing Gear could be traced to a nonmarital source. He was unable to provide any documentation tracing the loan and investment back to separate funds. While Stephen undeniably had some separate funds early in the marriage, the loan and investment were made years later. Stephen was unable to demonstrate that the separate funds still existed at the time of the loan and investment. At his deposition, Stephen stated that his loan to Coast Cycle World was $110,000 or $120,000. At trial he shifted his testimony to claim that it was almost half of that amount. The chancellor did not find Stephen's testimony consistent or credible, especially given Stephen's shifting testimony concerning a variety of expenses purportedly made with separate funds. The chancellor did not abuse his discretion in finding that Stephen failed to overcome the presumption that the loan and investment were made with marital assets, and in determining aspects of Stephen's testimony as not credible.

II.   **The chancellor did not err in refusing to admit Stephen's discovery that was produced last-minute.**

¶20.   After failing for a period of years to satisfy outstanding discovery requests and an order compelling discovery, Stephen delivered an unlabeled, disorganized, and unsigned-for box of discovery documents to Alaina's attorney for use during the second half of the trial proceedings. The box of documents was not accompanied by a formal written response to the previous discovery requests. The general confusion over whether the discovery had, in fact, been delivered was understandable, as was the chancellor's refusal to hear it, especially given Stephen's history of repeated failures and delays in producing discovery.

¶21.   Out of an abundance of caution, the trial court agreed to reopen the case to consider

10

the evidence in the box. The court instructed Stephen's attorney to prepare and provide ahead of time a summary of the discovery intended to be entered from the box at the hearing and the questions to be asked relevant to the evidence. This document was never produced or previewed to the other party. After two continuances requested by Stephen, Stephen refused to attend the hearing, electing instead to attend a mud-derby event. Even if the trial judge had erred in initially excluding the proffered evidence, Stephen squandered his opportunity to have the evidence admitted when he refused to attend the hearing after the case was reopened explicitly for that purpose. This issue is without merit.

### III. The trial court did not err in assessing Stephen a portion of Alaina's attorney and expert fees.

#### A. Attorney Fees

¶22. The chancellor awarded Alaina attorney fees limited to the expenses of reopening the case to admit Stephen's belatedly produced discovery. Prior to granting Stephen's motion to reopen the case, the chancellor communicated to both parties on the record that if he granted Stephen's motion, he would require Stephen to pay Alaina's costs related to reopening the case. Mississippi Rule of Civil Procedure 37(e) provides:

> In addition to the application of those sanctions, specified in Rule 26(d) and other provisions of this rule, the court may impose upon any party or counsel such sanctions as may be just, including the payment of reasonable expenses and attorneys fees, if any party or counsel (i) fails without good cause to cooperate in the framing of an appropriate discovery plan by agreement under Rule 26(c), or (ii) otherwise abuses the discovery process in seeking, making or resisting discovery.

¶23. We do not find that the chancellor erred in awarding Alaina attorney fees limited to the expenses of reopening the case given that the exclusive purpose of reopening the case

was to allow Stephen to cure his defective participation in the discovery process. We also note that, when arguing for the case to be reopened, Stephen's attorney expressed a willingness for his client to bear the cost of any expert fees relating to reopening the case, that the chancellor informed all parties that he would require Stephen to pay Alaina's attorney fees if the case was reopened, that no apparent objection was made, and that, after two continuances at Stephen's request, Stephen refused to attend the hearing.[7]

### B. Expert Fees

¶24. Stephen asserts that the chancellor erred in assessing him half of Levens's expert accounting fees. In *Burnham-Steptoe v. Steptoe*, 755 So. 2d 1225, 1236 (¶40) (Miss. Ct. App. 1999), this Court affirmed a chancellor's refusal to require a husband to pay his wife's accountant fees where a court-appointed accountant also testified, the wife's expert based his calculations on the court-appointed accountant's testimony, and the court could have derived the value of the asset based solely upon the court-appointed expert's testimony. We have a different situation in the case at hand. Here, Alaina's expert generated an independent report greater in scope than that of the court-appointed accountant, a report that included identifying genuine mistakes in the court-appointed accountant's report as well as identifying the loan and investment that constitute the disputed marital assets on appeal. The chancellor stated that the two experts "supplemented" each other. Unlike in *Steptoe*, the contributions of Alaina's expert were not entirely derivative and duplicative of the work done by the court-

---

[7] The chancellor conducted a *McKee* factor analysis on the record, and the reasonableness of the fees is not challenged on appeal. *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982).

12

appointed accountant. The court relied on the combined work of the two experts, and the court's determination on fees has Alaina and Stephen splitting the cost of both experts evenly.[8] We also note that Stephen's chronic resistance to meaningfully participating in discovery hampered both experts' progress. We do not find that the chancellor abused his discretion in assessing Stephen half of Levens's expert fees.

### IV. The chancellor erred in failing to perform a *Ferguson* analysis when conducting the equitable distribution of property.

¶25.    Stephen argues that the chancellor erred in failing to conduct a *Ferguson* analysis. Chancellors are required to apply the *Ferguson* factors on the record when conducting an equitable distribution of marital property, and failure to do so mandates reversal. *Lowrey*, 25 So. 3d at 280 (¶7); *Ferguson*, 639 So. 2d at 928. Here, the chancellor distributed the investment in Landing Gear and the loan to Coast Cycle World fifty-fifty between Stephen and Alaina. While this may ultimately prove to constitute an equitable distribution, failure to perform a *Ferguson* analysis on the record precludes meaningful appellate review. *Segree v. Segree*, 46 So. 3d 861, 865 (¶10) (Miss. 2010). An equitable distribution of property does not necessarily mean an equal distribution of property. *Trovato v. Trovato*, 649 So. 2d 815, 818 (Miss. 1995). On this issue we therefore reverse and remand for the chancellor to conduct a *Ferguson* analysis on the record.

### CONCLUSION

¶26.    We affirm the chancellor's classification of assets and award of expert and attorney

---

[8] Except for the expert fees incurred related to reopening the case, which the chancellor assessed entirely to Stephen.

fees. However, the chancellor erred in failing to perform a *Ferguson* analysis on the record. We therefore reverse and remand for the chancellor to make specific findings of fact and conclusions of law to support the division of the marital assets submitted by the parties for his determination.

¶27.   **THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND APPELLEE.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND WESTBROOKS, JJ., CONCUR.  LEE, C.J., NOT PARTICIPATING.**